[No. B129486. Second Dist., Div. Six. Mar. 21, 2000]

THE PEOPLE, Plaintiff and Appellant, v.
EUGENE JAMAR MASSEY, Defendant and Respondent.

**COUNSEL**

Gil Garcetti, District Attorney, George M. Palmer, Head Deputy District Attorney, Brentford J. Ferriera and Brent Riggs, Deputy District Attorneys, for Plaintiff and Appellant.

Bruce A. Hoffman, Alternate Public Defender, Vicki J. Vlasnik and Connie R. Quinones, Deputy Alternate Public Defenders, for Defendant and Respondent.

## OPINION

ABBE, J.*—The People appeal from an order of the trial court denying their motion to reinstate a felony complaint charging respondent Eugene Jamar Massey with murder. (Pen. Code, §§ 871.5, 1238, subd. (a)(9), 1387.1.)[1] The People contend the trial court misinterpreted the applicable standard under section 1387.1 and erroneously precluded it from filing the felony complaint against respondent. We agree and reverse.

### *Procedural Background*

In November of 1997, respondent was charged by felony complaint with the murder of Darryl Johnson (case No. TA037229). The complaint also alleged that in committing the murder, respondent was armed with a firearm. (§§ 187, 12022.5, subd. (a).) At the preliminary hearing, Los Angeles Police Department (LAPD) Officer Robert Solorza testified that on March 13, 1997, he interviewed Elbert Perry, a witness to the homicide. According to Officer Solorza, Perry said that he was standing near an apartment building in Los Angeles with four or five men, including the victim. Perry stated he saw a male known as "Baby Bop" approach the group, remove a firearm from his jacket, shoot Darryl Johnson, and run away. LAPD Detective William Masterson testified that he showed Perry a photographic lineup out of which Perry identified respondent as the shooter. Detective Masterson confirmed that Johnson died from one gunshot wound to the upper chest.

Following the above testimony, respondent was held to answer as charged and an information was filed in the superior court. Respondent pleaded not guilty and trial was set for March 3, 1998.

On the date set for trial, the court called the case and the prosecutor announced he was unable to proceed. Respondent orally moved to dismiss the charges and the trial court granted the motion pursuant to section 1382. The prosecution announced its intention to refile the complaint and rearraign respondent that afternoon. A new felony complaint was then filed in case No. TA038912 alleging the same charges against respondent.

On March 17, 1998, a preliminary hearing was conducted on the new complaint. The evidence at the hearing consisted of the testimony of Officers Solorza and Masterson. The substance of their testimony matched that given at the previous preliminary hearing. The magistrate held respondent to

---

*Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]All undesignated statutory references are to the Penal Code.

answer and the People filed an information in the superior court alleging the same charges. Respondent was arraigned on the new information, pleaded not guilty, and trial was ultimately set for July 24, 1998.

On July 24, the court called the case for trial and the prosecutor stated he was again unable to proceed. The defense then orally moved to dismiss the charges. The trial court granted the unopposed motion pursuant to section 1382. The prosecutor announced his intention to refile the charges a third time and defense counsel objected.

The People then filed the third complaint in case No. TA039715. Respondent was subsequently arraigned and moved to dismiss the complaint, arguing that a third prosecution was barred under section 1387 because the prior two dismissals were not due solely to excusable neglect. Specifically, respondent argued the People's failure "to have any witnesses present and/or under subpoena does not qualify as excusable neglect."

On October 1, 1998, the magistrate conducted a hearing on the motion. The court preliminarily found the charged offense was a violent felony under section 667.5, there had been two prior dismissals, and the People had the burden to show excusable neglect to justify the third prosecution. Detective Masterson then testified that he was assigned to investigate the homicide. He stated there were 14 witnesses to the murder, he had contacted all of them, they were initially all cooperative with police, and many identified respondent from a photographic lineup. He stated that as time went on, however, he had difficulty contacting the witnesses or their family members. He explained the murder took place in a gang area on South Main Street in Los Angeles. He made notes on subpoenas he had tried to serve when he found a new or different address, or computer runs he had made while trying to locate people, and that was the extent of the record he made of his efforts to contact witnesses. He attempted at least 12 times to locate witnesses prior to trial on the first filing without success, and stated on two occasions he was told the witnesses were avoiding him. He stated he ultimately was unable to serve subpoenas on anyone for the first trial.

Detective Masterson further testified that after the second preliminary hearing, he made additional attempts to locate witnesses and found Elbert Perry and two members of his family. He stated he was unable to locate the Perrys for the first trial because they had moved from their previous address on Main Street without leaving a forwarding address. He located them through postal and computer searches and then kept in touch with them. When he received a call from the district attorney the day before the date set for trial on the second information, he telephoned the Perrys and informed

them of the court date. He testified that he did not have any subpoenas. Consequently, early on the morning of the court date, he and his partner went to the Perrys' residence and telephoned the district attorney's office. He was informed that the deputy district attorney had already left for court. Detective Masterson stated he then called the court, reached the deputy district attorney, and told him, "I'm sitting here with the Perrys, do you want me to bring them down now or do you want me to wait?" The detective stated the prosecutor told him the case had just been dismissed for the second time. The detective stated that he thought he had explained to the prosecutor that he would have the Perrys available for trial.

On cross-examination, Detective Masterson clarified that one witness was subpoenaed for the first preliminary hearing but not called. No witnesses were subpoenaed for the first trial, the second preliminary hearing, or the second trial. He did not find the Perrys until after the second preliminary hearing was held.

The prosecutor and defense counsel then stipulated that investigator Joel Adams of the district attorney's office would testify that he attempted on 18 to 20 occasions to serve subpoenas on witnesses for the first trial at locations he believed they were available, but was unsuccessful.

During the hearing, the prosecutor argued there had been no error by either the police or district attorney's office, and that the third filing should be permitted because the witnesses were avoiding them. The prosecutor also argued that the failure of the witnesses to come forward to aid the prosecution was error within the meaning of section 1387.1. As to the second filing, the prosecutor argued that the dismissal was due to a miscommunication regarding the witnesses' availability.

At the conclusion of the hearing, the magistrate granted respondent's motion to dismiss, reasoning that as to the first filing, section 1387.1 was inapplicable because the difficulty in obtaining the witnesses' cooperation and appearance was not error or neglect within the meaning of the statute. The magistrate stated: "The fact that the witnesses didn't come in is not error. The fact that the investigators could not get them in, the fact that the witnesses hid themselves is not error. It's not excusable neglect. It doesn't fall within the purviews of this code section, and that's what we're deciding today." As to the second filing, the magistrate found that the testimony of the officers could not support a finding of excusable neglect because the evidence was inconclusive as to whether subpoenas were issued and whether there was a miscommunication as to the witnesses' availability.

The People then filed a written motion in the superior court to reinstate the complaint pursuant to section 871.5. The People argued that its failure to

get the witnesses to court for the first and second trial dates was the result of excusable neglect.

Respondent opposed the motion, arguing in part that there had been no showing by the People of any type of neglect, i.e., the diligence shown in attempting to locate witnesses could not be considered excusable neglect under section 1387.1.

The superior court denied the People's motion.

### Standard of Review

Section 871.5 provides that when an action is dismissed by a magistrate pursuant to section 1387, the prosecutor may make a motion in the superior court to compel the magistrate to reinstate the complaint. Under section 871.5, subdivision (b), "[t]he only ground for the motion shall be that, as a matter of law, the magistrate erroneously dismissed the action or a portion thereof."

On appeal from an order denying a motion to reinstate a criminal complaint under section 871.5, we disregard the superior court's ruling and directly examine the magistrate's ruling to determine if the dismissal of the complaint was erroneous as a matter of law. To the extent the magistrate's decision rests upon factual findings, "[w]e, like the superior court, must draw every legitimate inference in favor of the magistrate's ruling and cannot substitute our judgment, on the credibility or weight of the evidence, for that of the magistrate." (*People v. Woods* (1993) 12 Cal.App.4th 1139, 1147-1148 [15 Cal.Rptr.2d 906].)

Section 1387.1 permits a third filing of charges of murder and certain other violent offenses "where either of the prior dismissals under Section 1387 were due solely to excusable neglect." (§§ 1387.1, subd. (a), 667.5.) The statute broadly defines excusable neglect by stating it "includes, but is not limited to, error on the part of the court, prosecution, law enforcement agency, or witnesses." (§ 1387.1, subd. (b).) Section 1387.1, subdivision (a), adds that "[i]n no case shall the additional refiling of charges provided under this section be permitted where the conduct of the prosecution amounted to bad faith."

"Excusable neglect" is a legal term of art common in the law. Appellate courts have held that the phrase is to be given the same construction in criminal cases as it has previously been given in civil cases. (*Tapp v. Superior Court* (1989) 216 Cal.App.3d 1030, 1035-1036 [265 Cal.Rptr.

267].) "Simply expressed, '[e]xcusable neglect is neglect that might have been the act or omission of a reasonably prudent person under the same or similar circumstances.'" (*People v. Woods, supra,* 12 Cal.App.4th at p. 1149.)

The application of section 1387.1 is generally a discretionary determination for the judge which should be afforded great weight unless clear abuse of discretion is demonstrated. (*People v. Woods, supra,* 12 Cal.App.4th at p. 1149.) Courts recognize, however, that remedial statutes, such as section 1387.1, require that a lower court's decision denying relief be more carefully scrutinized than an order granting relief. (*Bettencourt v. Los Rios Community College Dist.* (1986) 42 Cal.3d 270, 276 [228 Cal.Rptr. 190, 721 P.2d 71].) Thus, "[u]nless *inexcusable* neglect is clear, the policy favoring trial on the merits prevails." (*Woods, supra,* at p. 1149, italics added.)

### Discussion

The People contend the magistrate erred by giving the phrase "excusable neglect" in section 1387.1 too narrow a meaning. It argues that "if the police and prosecution had done all that could be reasonably expected to locate their witnesses and get them to court, and yet not succeeded, then, so far as concerns the construction of section 1387.1, their failure should still be labeled *excusable neglect,* despite the absence of any actual *neglect,* as commonly understood to include an element of carelessness or lack of sufficient regard or effort." The People argue the absence of negligence on its part should not take the case out of section 1387.1. We agree.

The first dismissal here was the result of excusable neglect. The "neglect" under section 1387.1 was the failure of the People to have the witnesses in court on the date set for the first trial. This neglect was "excusable" because reasonable efforts had been made to secure the witnesses' attendance. The evidence is undisputed that Detective Masterson and the investigator for the district attorney's office attempted on numerous occasions to locate witnesses and/or serve them with subpoenas for the first trial without success. Indeed, respondent's counsel conceded below that "there was no failure to perform."

Paradoxically, the magistrate found no neglect on the part of the prosecutor and law enforcement in failing to secure the attendance of the witnesses at the first trial and yet concluded that their diligence prevented the refiling. The magistrate's finding of diligence is equivalent to a finding of excusable neglect under section 1387.1. We conclude the magistrate erroneously applied the standard set forth in section 1387.1 to its factual findings. Because

section 1387.1 allows a refiling where *either* of the two prior dismissals were the result of excusable neglect, the magistrate erred in dismissing the complaint as a matter of law.

 Section 1387.1 is a remedial tool designed to save serious felony prosecutions from improvident loss where there is no bad faith on the part of the prosecution and the inability to prosecute the action is due to excusable neglect. (See *People v. Woods, supra,* 12 Cal.App.4th at p. 1157.) The magistrate's interpretation of the statute penalizes the prosecution for making diligent efforts to bring a case to trial, a result surely not intended by the Legislature.

Although not necessary to our determination, we also observe that the second dismissal was the result of excusable neglect. The detective testified that he spoke with the prosecutor the day before trial. In lieu of subpoenaing the witnesses, he went to their residence to drive them to court, telephoned the prosecutor for instructions as to when to bring them, and was informed that the case had already been dismissed. The detective believed he had explained to the prosecutor that the witnesses were available. Although the prosecutor did not testify at the hearing before the magistrate, the only reasonable inference from the detective's testimony is that the prosecutor had misunderstood the detective or he would have contested the dismissal of the charges. There was no suggestion in the court below of bad faith on the part of the prosecution. A miscommunication in this context constitutes excusable neglect under section 1387.1. The lower court erred, therefore, in refusing to reinstate the felony complaint.[2]

The order denying the People's motion to reinstate the felony complaint in case No. TA039715 is reversed.

Gilbert, P. J., and Yegan, J., concurred.

A petition for a rehearing was denied April 10, 2000, and respondent's petition for review by the Supreme Court was denied July 12, 2000. Kennard, J., was of the opinion that the petition should be granted.

---

[2]In light of this conclusion, we need not address the remaining contentions raised by the People that the dismissals were premature under section 1382.