Filed 8/25/22  P. v. Rosner CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JESSIE SHANE ROSNER,<br><br>Defendant and Appellant. | F080895<br><br>(Super. Ct. No. F19905466)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  F. Brian Alvarez, Judge.

Elizabeth Campbell, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri and Barton Bowers, for Plaintiff and Respondent.

-ooOoo-

Pursuant to a plea agreement, defendant Jessie Shane Rosner was convicted of first degree robbery with two weapons enhancements and sentenced to eight years in prison. Defendant obtained a certificate of probable cause and appealed. (Pen. Code, § 1237.5.)[1] He challenges the denial of his motion to dismiss the charges under section 1387's two-dismissal rule and the imposition of the two one-year weapons enhancements under section 12022, subdivisions (a)(1) and (b)(1). For the reasons set forth below, we find no error and affirm the judgment.

## INTRODUCTION

In January 2018, numerous crimes, including burglary, robbery, carjacking, kidnapping, sexual assault, and witness dissuasion, were allegedly committed on different days by multiple individuals who were members of or had connections to the Fresneck Gangsters, a white criminal street gang in Fresno. In October 2019, the prosecutor filed a 39-count information against defendant and codefendants Timothy Vassar, Joie Carrell, Jr., Ryan Aivazian, and Benjamin Horton. Defendant was charged in Counts 29 and 34, respectively, with home invasion robbery and carjacking committed on or around January 22, 2018, with attached gang and weapon enhancements. (§§ 211/213, subd. (a)(1)(A) [count 29], 215, subd. (a) [count 34], 186.22, subd. (b)(4)(B), 12022, subd. (a)(1).) In addition, as to defendant, the information alleged one prior serious or violent felony conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), one prior serious felony conviction enhancement (§ 667, subd. (a)(1)), and five prior prison term enhancements (§ 667.5, subd. (b)).

In December 2019, defendant reached a plea agreement with the prosecutor that included a maximum sentence of eight years in prison, comprised of the lower term of three years for robbery in concert, doubled for the prior strike conviction, with an additional one year for a principal armed with a firearm and one year for personal use of

---

[1]    All further references are to the Penal Code unless otherwise stated.

2.

a knife, under section 12022, subdivisions (a)(1) and (b)(1). Pursuant to the terms of the agreement, defendant pleaded no contest to robbery and admitted it was committed in concert with others. He also admitted the gang enhancement allegation, the allegation that a principal was armed with a firearm, and the allegation that he personally used a knife.[2] In accordance with the plea agreement, the trial court dismissed the carjacking charge and dismissed the prior serious felony conviction and prior prison term enhancements.

At the sentencing hearing in February 2020, defendant admitted the prior strike conviction allegation.[3] The trial court struck the punishment for the gang enhancement pursuant to the plea agreement, but declined to exercise its discretion to strike one or both of the section 12022 enhancements, as requested by defendant. The court imposed the agreed-upon maximum term of eight years in prison.

Prior to the filing of the operative information, charges against defendant were dismissed twice within the meaning of section 1387 and, on appeal, defendant claims the court abused its discretion when it found "excusable neglect" under section 1387.1 and denied his motion to dismiss charges. He also claims that the court erred when it imposed sentence enhancements under both subdivision (a)(1) and subdivision (b)(1) of section 12022, and that we may review this claim despite his lack of objection in the trial court because the sentence was unauthorized. (§§ 12022, subd. (e), 1170.1, subd. (f).) If we conclude his sentencing claim is forfeited, he argues trial counsel was ineffective.

The People dispute any entitlement to relief.

---

[2]    Under the terms of the plea agreement, the trial court granted the prosecutor's motion to amend the information to add an enhancement for personal use of a knife under section 12022, subdivision (b)(1).

[3]    In 1997, defendant suffered a juvenile adjudication for violating Welfare and Institutions Code section 1768.8, subdivision (b), assault with personal use of a deadly or dangerous weapon. At sentencing, after completing research, the parties agreed defendant's juvenile adjudication qualified as a prior strike offense. (§ 667, subd. (d)(3).)

3.

We conclude the magistrate did not abuse his discretion when he found that the second dismissal in August 2019, based on the unavailability of a material trial witness, was due to excusable neglect under section 1387.1. This determination is dispositive of defendant's appellate claim and, therefore, we need not decide whether the superior court, sitting in review, erred when it concluded that the first dismissal in September 2018, which resulted from the prosecutor's failure to adduce sufficient evidence before the grand jury, was also due to excusable neglect. Finally, we conclude defendant's challenge to his sentence as unauthorized is barred because the sentence was imposed pursuant to the terms of the plea bargain and trial counsel's failure to object was not ineffective assistance of counsel. Accordingly, we affirm the judgment.

**DISCUSSION**

## I.  Claim of Entitlement to Dismissal Under Section 1387

### A.  Legal Principles

Section 1387 and 1387.1 "are part of 'a series of statutes, commencing with Penal Code section 1381, [that] are a construction and implementation of the California Constitution's speedy trial guarantee.'"[4] (*People v. Henderson* (2020) 46 Cal.App.5th 533, 542, quoting *People v. Villanueva* (2011) 196 Cal.App.4th 411, 422.) "Under section 1387, felony prosecutions are generally 'subject to a two-dismissal rule; two

---

[4]     Subject to certain exceptions, section 1387 provides, "An order terminating an action pursuant to this chapter, or Section 859b, 861, 871, or 995, is a bar to any other prosecution for the same offense if it is a felony or if it is a misdemeanor charged together with a felony and the action has been previously terminated pursuant to this chapter, or Section 859b, 861, 871, or 995, or if it is a misdemeanor not charged together with a felony .…" (*Id.*, subd. (a).)

    Section 1387.1 provides, "Where an offense is a violent felony, as defined in Section 667.5 and the prosecution has had two prior dismissals, as defined in Section 1387, the people shall be permitted one additional opportunity to refile charges where either of the prior dismissals under Section 1387 were due solely to excusable neglect. In no case shall the additional refiling of charges provided under this section be permitted where the conduct of the prosecution amounted to bad faith." (*Id.*, subd. (a).) "'[E]xcusable neglect' includes, but is not limited to, error on the part of the court, prosecution, law enforcement agency, or witnesses." (*Id.*, subd. (b).)

4.

previous dismissals of charges for the same offense will bar a new felony charge.'" (*People v. Trujeque* (2015) 61 Cal.4th 227, 255, quoting *Burris v. Superior Court* (2005) 34 Cal.4th 1012, 1019 (*Burris*).)  However, section 1387.1 provides an exception to the two-dismissal rule for violent felonies:  "the prosecution [may] file a violent felony charge a third time if either of the prior dismissals were due to 'excusable neglect,' and the prosecution did not act in 'bad faith.'"  (*People v. Trujeque, supra*, at pp. 255–256, quoting § 1387.1, subd. (a).)

Section 1387 serves several related public policy interests.  (*People v. Juarez* (2016) 62 Cal.4th 1164, 1170 (*Juarez*), citing *Burris, supra*, 34 Cal.4th at p. 1018.)  "'It curtails prosecutorial harassment by placing limits on the number of times charges may be refiled.  [Citations.]  The statute also reduces the possibility that prosecutors might use the power to dismiss and refile to forum shop.  [Citations.]  Finally, the statute prevents the evasion of speedy trial rights through the repeated dismissal and refiling of the same charges.'"  (*Juarez, supra*, at p. 1170, quoting *Burris, supra*, at p. 1018.)  "By providing that a single dismissal of a misdemeanor bars further prosecution for the same offense but requiring two dismissals for felonies, '[s]ection 1387 reflects a legislative judgment that because of the heightened threat to society posed by serious crimes, more filings should be permitted for serious crimes than for minor ones.'"  (*Juarez, supra*, at pp. 1170–1171, quoting *Burris, supra*, at p. 1019, fn. omitted.)  Further, "'section 1387.1 carves out the most serious category of felonies, violent felonies, and allows a third filing for these crimes under certain circumstances.'"  (*Juarez, supra*, at p. 1171, quoting *Burris, supra*, at p. 1019, fn. 6.)

At issue in this appeal, "'"[e]xcusable neglect [within the meaning of section 1387.1] is neglect that might have been the act or omission of a reasonably prudent person under the same or similar circumstances."'"  (*People v. Massey* (2000) 79 Cal.App.4th 204, 211 (*Massey*), quoting *People v. Woods* (1993) 12 Cal.App.4th 1139, 1149 (*Woods*); accord, *People v. Mason* (2006) 140 Cal.App.4th 1190, 1196 (*Mason*);

5.

*Miller v. Superior Court* (2002) 101 Cal.App.4th 728, 741 (*Miller*).) As *Massey* explained, "[s]ection 1387.1 is a remedial tool designed to save serious felony prosecutions from improvident loss where there is no bad faith on the part of the prosecution and the inability to prosecute the action is due to excusable neglect." (*Massey, supra*, at p. 212, citing *Woods, supra*, at p. 1157.) "'[U]nless *inexcusable* neglect is clear, the policy favoring trial on the merits prevails.'" (*Massey, supra*, at p. 211, quoting *Woods, supra*, at p. 1149.)

We review the magistrate's finding of excusable neglect for abuse of discretion. (*Mason, supra*, 140 Cal.App.4th at p. 1196, citing *Massey, supra*, 79 Cal.App.4th at p. 211 & *Miller, supra*, 101 Cal.App.4th at pp. 740–741.) We "'draw every legitimate inference in favor of the magistrate's ruling and cannot substitute our judgment on the credibility of witnesses or weight of the evidence.'" (*Miller, supra*, at pp. 740–741, quoting *People v. Eid* (1994) 31 Cal.App.4th 114, 125.) We will not "disturb an exercise of discretion unless it is 'arbitrary, capricious, or patently absurd.'" (*Miller, supra*, at p. 741, quoting *People v. Jordan* (1986) 42 Cal.3d 308, 316.)

## B. Background

### 1. Facts Underlying Crimes

As this case was resolved by plea bargain, the following factual allegations are drawn from the probation report.[5] Carrell was allegedly a shot caller for the Fresneck Gangsters and believed that A.G., an adult male, was having a sexual relationship with and providing drugs to Carrell's minor daughter. On January 10, 2018, John Poytress pistol-whipped A.G. and took his motorcycle. On January 11, 2018, A.G. went to the residence of Carrell's minor daughter. She was not there, but A.G. was threatened by

---

[5] Our resolution of defendant's legal claims does not require a detailed summary of the facts underlying the multi-day crime spree or identification of all the various participants. Therefore, we limit the facts summarized to those relevant to our disposition or necessary for clarity.

Vassar, who invoked Carrell's name. Vassar took A.G.'s wallet and necklace, but told him that he could leave and that his motorcycle was across the street.

On January 13, 2018, A.G. was confronted in his garage by Carrell and Aivazian. Carrell's daughter had left her backpack there. Carrell stabbed A.G., took A.G.'s drill and motorcycle, and left with his daughter's backpack.

On January 22, 2018, Vassar pistol-whipped A.G. in his garage and then blindfolded him. Vassar and two others, identified as defendant and Horton, stole multiple items from the garage. A.G.'s stolen motorcycle was located shortly thereafter, and linked by the rider to Vassar's brother, Westley Vassar.

Multiple individuals, including defendant, Carrell, Aivazian, the Vassar brothers, and Horton, were subsequently arrested in connection with the crimes.

### 2. Defendant's Motions to Dismiss Under Section 1387

On August 16, 2019, three days before trial was set to commence, the prosecution moved to dismiss and refile charges against defendant, Carrell, Aivazian, the Vassar brothers, and Horton. A prosecutor appearing on behalf of the assigned prosecutor represented the dismissal was necessary due to the inability to locate material witnesses. Defendant's counsel did not object to the dismissal, but requested defendant's immediate release. Relying on sections 1387 and 1387.1, counsel argued that because this was the second dismissal of charges against defendant, the prosecutor's ability to proceed against him on a third filing required a showing of excusable neglect. Although the magistrate[6] granted the prosecutor's motion to dismiss and refile charges, he noted both that defendant had been ready to proceed and that there had been a recent disclosure of discovery by the prosecutor.

Three days later, citing section 1387, defendant filed a motion to dismiss under the statute's "two-dismissal rule." (*Burris, supra*, 34 Cal.4th at p. 1019.) The prosecutor

---

[6] The Honorable Jonathan M. Skiles.

filed an opposition, and the motion was argued on the first day of the preliminary hearing, which began on August 29, 2019.  After hearing argument, the magistrate[7] deferred his ruling pending completion of the preliminary hearing, in accordance with *Miller, supra*, 101 Cal.App.4th at page 739.

During the course of the days-long preliminary hearing, the prosecutor presented some testimony relevant to resolution of defendant's section 1387 motion.  At the conclusion of the proceeding, the magistrate denied defendant's motion to dismiss the charges after finding that the prosecution's inability to locate a material witness for trial—Jane Doe, a victim in the multi-count case and an identity witness against defendant—was due to excusable neglect under section 1387.1.  The magistrate expressly declined to determine whether the first dismissal in 2018 pursuant to defendant's section 995 motion was also due to excusable neglect.[8]  Defendant was then held to answer on the charges.

On November 6, 2019, citing section 995, section 1387, and *Miller*, defendant filed a substantially similar motion to dismiss challenging the magistrate's ruling.  (*Miller, supra*, 101 Cal.App.4th at p. 740.)  The prosecutor opposed the motion and on November 22, 2019, after hearing argument but receiving no new evidence, the superior court[9] denied the motion.  (*Woods, supra*, 12 Cal.App.4th at pp. 1147–1148.)  Although the court observed that there was evidence from which to conclude the second dismissal

---

[7]     The Honorable F. Brian Alvarez.

[8]     At the time of the crimes, Doe was in a relationship with Timothy Vassar and shared an apartment with Vassar, Horton, and others.  While testifying before a grand jury in 2018, Doe disclosed that she had been sexually assaulted by Horton and Vassar, and they were subsequently charged with additional crimes arising from those alleged assaults.  This unexpected disclosure led to a break in the proceeding for a forensic sexual assault interview.  After the proceeding began again, the prosecutor neglected to ask Doe questions sufficient to establish defendant as a participant in robbery and carjacking.  As a result, on September 7, 2018, defendant's section 995 motion was granted, which constituted the first dismissal under section 1387.  The prosecutor refiled charges against defendant the same day.

[9]     The Honorable W. Kent Hamlin.

8.

was excusable neglect, it focused on the first dismissal in 2018 and ruled that dismissal under section 995 after the prosecutor failed to adduce sufficient evidence before the grand jury connecting defendant to the crimes was due to excusable neglect.

On appeal, defendant argues that neither the first dismissal on September 7, 2018, nor the second dismissal on August 16, 2019, was due to excusable neglect within the meaning of section 1387.1 and, therefore, the third filing of charges was barred under section 1387, entitling him to dismissal. The People maintain that no relief is due because both dismissals were due to excusable neglect. For the reasons that follow, we affirm the magistrate's ruling that the second dismissal was due to excusable neglect and need not decide whether the first dismissal was also attributable to excusable neglect by the prosecutor, as found on review by the superior court.

## C. Analysis

There is no dispute that robbery and carjacking are both violent felonies within the meaning of section 1387.1, and defendant did not claim then, and does not claim now, that the prosecutor acted in bad faith. (§§ 1387.1, subd. (a), 667.5, subd. (c)(9), (17).) Thus, our review is confined to whether the magistrate's finding of excusable neglect under section 1387.1 constituted an abuse of discretion.

This was a complicated, gang-related case involving multiple offenses committed by multiple defendants on different dates in January 2018, as previously set forth. Although the prosecutor did not charge conspiracy, he was relying on a theory of conspiracy among the codefendants and at the time of the second dismissal on August 16, 2019,[10] the prosecution had been unable to locate and serve Doe for trial, which defendant's motion to dismiss reflects was set for August 19.

---

**10**     Unless otherwise stated, all further dates set forth in part I.C. of the Discussion occurred in 2019.

9.

The prosecutor bore the burden of demonstrating, by a preponderance of the evidence, excusable neglect under section 1387.1 (*Miller, supra*, 101 Cal.App.4th at pp. 747–748), and, to that end, Oscar Torres, a senior investigator with the district attorney's office, testified at the preliminary hearing regarding his attempts to serve Doe prior to trial. He stated he received an investigation request on July 17 and spent the day of July 22 attempting to locate and serve Doe. He searched local law enforcement databases for an address or phone number, and he then attempted to reach Doe at several phone numbers. Some of the numbers were incorrect or disconnected, and he did not receive any calls back from the messages he was able to leave. He made attempts to locate Doe at numerous addresses, and he spoke with three or four of her family members. He testified he also made attempts to locate Doe on July 29 and July 30, and he spoke with the prosecutor's investigating officer, David Wilkin, about the issue. Between July 30 and August 16, he had some email and text contact with Doe's family. He was unable to locate Doe, however.

The prosecutor subsequently offered to stipulate that Torres, after later reviewing his notes, first attempted to serve Doe on July 25. One codefendant agreed to the stipulation, and another reserved the issue. The record does not reflect defendant's position on the issue, but the date discrepancy is not material to our resolution of defendant's claim.

During a break in the proceeding, the prosecutor told the magistrate that he had received a text message informing him that Torres, who searched for Doe in advance of the preliminary hearing and searched for her again after his testimony concluded, had located her and brought her in. The prosecutor stated they were waiting for a victim advocate to arrive. He described the situation as "a pretty shocking event for [her]" and said she was regaining her composure.

Doe thereafter testified at the preliminary hearing. Given the nature of the sex offense charges against Horton and Vassar, her examination necessarily entailed difficult

10.

questions and answers, and the record reflects that Doe was upset. Relevant to the magistrate's ruling on defendant's section 1387 motion, Doe testified she was aware law enforcement and the district attorney's office had been looking for her to bring her to court, and she was avoiding them. She also testified that while in jail in March 2018, she was threatened by Carrell's "old lady," who was also in jail and told Doe that there was "a green light" on her for snitching, which left Doe scared for herself and her young child.

In ruling on defendant's section 1387 motion, the magistrate considered Torres's and Doe's testimony, and noted his observation of Doe during her testimony. He described Doe as "very upset and crying," and found that she was "very clearly" a witness who was not "going to be readily available." He found Doe was a material witness in the case, concluded that the dismissal based on the prosecution's inability to locate and serve her for trial was excusable neglect within the meaning of section 1387.1, and denied defendant's motion.

We find no abuse of discretion. Defendant points out that the magistrate relied in error on July 22 as the day Torres dedicated to locating Doe rather than July 25; and he contends that he was unable to locate any cases for the proposition that third party threats are sufficient to show excusable neglect. At bottom, however, defendant argues that the prosecutor failed to demonstrate due diligence in attempting to locate and serve Doe prior to trial and, therefore, the magistrate erred in denying his motion to dismiss under section 1387.

As an initial matter, the record does not reflect that defendant accepted the prosecutor's offer to stipulate that Torres looked for Doe on July 25, but, regardless, we are not persuaded that the three-day discrepancy is material in this case. In addition, the magistrate did not find excusable neglect based on third party threats. Notably, an *exception* to the two-dismissal rule is presented when dismissal is "the result of direct intimidation of a material witness," but that was not the issue. (§ 1387, subd. (a)(2).)

11.

Rather, the magistrate evaluated the prosecution's efforts to locate Doe for trial in the context of her testimony that she had been threatened for snitching in the case, the threat scared her, and she knew of and was avoiding attempts to secure her attendance in court.

The relevant neglect was the prosecutor's failure to locate and serve Doe for trial and it was excusable if the prosecutor made "reasonable efforts" to secure Doe's attendance. (*Massey, supra*, 79 Cal.App.4th at p. 211; accord, *Miller, supra*, 101 CalApp.4th at p. 741; see *Mason, supra*, 140 Cal.App.4th at p. 1196.) Citing *Tapp v. Superior Court* (1989) 216 Cal.App.3d 1030, 1037 and *Woods, supra*, 12 Cal.App.4th at pages 1157–1158, defendant concedes that prosecutors are not required to exhaust all available avenues to demonstrate excusable neglect. He contends, however, that it was mere weeks before trial when the prosecutor began to look for Doe.

The trial date was set for August 19. More than four weeks before trial, Torres received requests to serve several witnesses, including Doe, and there is no indication that the prosecutor was aware then of "'"a substantial risk"'" that Doe was going to evade service.[11] (*People v. Friend, supra*, 47 Cal.4th at p. 68.) Torres commenced attempting to locate and serve Doe approximately three and one-half weeks before trial and there is also no indication that either he or the prosecutor was aware of and failed to explore any viable leads on Doe's whereabouts such that the effort to locate her fell short of reasonable. (*Woods, supra*, 12 Cal.App.4th at pp. 1157–1158.) To the contrary, Torres attempted to locate Doe via multiple phone numbers and addresses, and through multiple contacts with her family, continuing from July 25 up to the August 16 dismissal.

---

[11] In determining whether a witness is unavailable for the purpose of admitting prior testimony, the California Supreme Court observed that "'[t]he prosecution is not required "to keep 'periodic tabs' on every material witness in a criminal case .…"'" (*People v. Friend* (2009) 47 Cal.4th 1, 68, quoting *People v. Wilson* (2005) 36 Cal.4th 309, 342; Evid. Code, § 240, subd. (a)(5).) However, "when there is knowledge of '"a substantial risk"' that an '"important witness would flee,"' the prosecutor is required to '"take adequate preventative measures" to stop the witness from disappearing.'" (*People v. Friend, supra*, at p. 68, quoting *People v. Wilson, supra*, at p. 342.)

12.

Defendant asserts that *Mason*, *Miller*, and *Massey*, all of which involved dismissals for failure to produce witnesses, are distinguishable because they involved greater diligence by the prosecutors. (*Mason, supra*, 140 Cal.App.4th at pp. 1196–1197 [due to a miscommunication, material witness with history of cooperation left country and did not appear for trial]; *Miller, supra*, 101 CalApp.4th at pp. 741–742 [months-long effort to locate and serve material trial witness]; *Massey, supra*, 79 Cal.App.4th at pp. 208–209 [inability to locate material witnesses, resulting in first dismissal, and miscommunication over witnesses' availability, resulting in second dismissal, both constituted excusable neglect].) This argument is unpersuasive. Those cases neither purport to establish the outer bounds of excusable neglect nor involve facts that serve to undermine the magistrate's finding of excusable neglect in this case. As *Woods* stated, "[N]o two cases in this area pose identical facts, and no one would dare argue that all 'excusable neglect' cases can be neatly placed along a continuum and reconciled in result. Part of the reason lies in the concept of discretion. Quite similar facts might result in one trier of fact granting relief and another denying it, yet each ruling might be upheld." (*Woods, supra*, 12 Cal.App.4th at p. 1153.) Although we are not persuaded by defendant's reliance on these other cases as analogous, it would nonetheless be an incongruous result if mere inadequate communication sufficed to establish excusable neglect while a concerted effort to locate a fearful and avoidant witness over a period of weeks did not.

As previously stated, "'"unless inexcusable neglect is clear, the policy favoring trial on the merits prevails."'" (*Woods, supra*, 12 Cal.App.4th at p. 1149.) In ruling, the magistrate evaluated the credibility of the witnesses and weighed the evidence. On this record, we do not agree with defendant that the magistrate's findings were unsupported by substantial evidence and his ruling was an abuse of discretion. Therefore, we affirm the magistrate's finding that the dismissal on August 16 was due to excusable neglect within the meaning of section 1387.1. As this determination forecloses defendant's claim

of error on appeal, we need not reach the superior court's finding that the first dismissal was excusable neglect.

## II. Imposition of Multiple Enhancements Under Section 12022

### A. Unauthorized Sentence Claim

Defendant's sentence included two one-year enhancements under section 12022, one for a principal armed with a firearm and one for personal use of a deadly or dangerous weapon. (§ 12022, subds. (a)(1), (b)(1).) However, discretion to impose two enhancements is limited by section 1170.1, which provides, "When two or more enhancements may be imposed for being armed with or using a dangerous or deadly weapon or a firearm in the commission of a single offense, only the greatest of those enhancements shall be imposed for that offense.…" (*Id.*, subd. (f).) Further, section 12022 provides, "For purposes of imposing an enhancement under Section 1170.1, the enhancements under this section shall count as a single enhancement." (*Id.*, subd. (e).) Thus, it is ordinarily error to impose two enhancements on a single count under section 12022, but in this instance, the prosecutor added a second enhancement under section 12022, subdivision (b)(1), for the express purpose of reaching an eight-year maximum sentence.

Defendant relies on the general rule that "[a] claim that a sentence is unauthorized may be raised for the first time on appeal, and is subject to correction whenever the error comes to the attention of the reviewing court." (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1048, fn. 7, citing *People v. Dotson* (1997) 16 Cal.4th 547, 554, fn. 6; accord, *In re Sheena K.* (2007) 40 Cal.4th 875, 886–887.) However, this narrow exception to the forfeiture doctrine has its own exception. "When a trial court fails to act within the manner prescribed by [statute], it is said to have taken an ordinary act in excess of jurisdiction. [Citation.] Such 'ordinary' jurisdiction, unlike fundamental jurisdiction, can be conferred by the parties' decisions—such as a decision not to object to any perceived deficiency—and so is subject to defenses like estoppel, waiver, and consent." (*People v.*

14.

*Chavez* (2018) 4 Cal.5th 771, 780.) Thus, "[w]here the defendants have pleaded guilty in return for a *specified* sentence, appellate courts will not find error even though the trial court acted in excess of jurisdiction in reaching that figure, so long as the trial court did not lack *fundamental* jurisdiction. The rationale behind this policy is that defendants who have received the benefit of their bargain should not be allowed to trifle with the courts by attempting to better the bargain through the appellate process." (*People v. Hester* (2000) 22 Cal.4th 290, 295.)

Defendant acknowledges the foregoing, but argues that he bargained for a *maximum* sentence of eight years rather than a *specified* sentence. This argument rings hollow. "'When a defendant maintains that the trial court's sentence violates rules which would have required the imposition of a more lenient sentence, yet the defendant avoided a potentially harsher sentence by entering into the plea bargain, it may be implied that the defendant waived any rights under such rules by choosing to accept the plea bargain.'" (*People v. Hester, supra*, 22 Cal.4th at p. 295.) Here, the parties bargained for a maximum sentence of eight years, comprised of six years for robbery and two years for the two sentence enhancements under section 12022. Prior to his plea, defendant was exposed to a potential indeterminate term of 30 years to life under the gang statute's alternate penalty provision applicable to home invasion robbery and carjacking, doubled under the Three Strikes law. (§§ 186.22, subd. (b)(4)(B), 667, subd. (e)(1); *People v. Lopez* (2022) 12 Cal.5th 957, 970; *People v. Jefferson* (1999) 21 Cal.4th 86, 101; *People v. Sok* (2010) 181 Cal.App.4th 88, 96.) Defendant may not now challenge imposition of the specific—and significantly more favorable—prison sentence he bargained for on the basis that it was unauthorized.

**B. Ineffective Assistance of Counsel Claim**

Defendant's claim of ineffective assistance of counsel similarly fails. To prevail on a constitutional claim of ineffective assistance of counsel, defendant "'must satisfy a two-pronged showing: that counsel's performance was deficient, and that [he] was

prejudiced, that is, there is a reasonable probability the outcome would have been different were it not for the deficient performance.'" (*People v. Woodruff* (2018) 5 Cal.5th 697, 736, quoting *People v. Alexander* (2010) 49 Cal.4th 846, 888; accord, *Strickland v. Washington* (1984) 466 U.S. 668, 687.)

"[A] defendant's burden [is] 'difficult to carry on direct appeal,' as a reviewing court will reverse a conviction based on ineffective assistance of counsel on direct appeal only if there is affirmative evidence that counsel had ""'no rational tactical purpose'"" for an action or omission." (*People v. Mickel* (2016) 2 Cal.5th 181, 198, quoting *People v. Lucas* (1995) 12 Cal.4th 415, 437.) Given defendant's initial exposure to an indeterminate life sentence and the parties' express intent to bargain for a maximum determinate term of eight years, defendant cannot meet his burden of demonstrating that trial counsel's failure to object to the bargained-for sentence lacked a rational tactical purpose.

## DISPOSITION

The judgment is affirmed.


                                                                    MEEHAN, J.
WE CONCUR:



SMITH, Acting P. J.



DeSANTOS, J.