Filed 6/13/23  Acevedo v. Superior Court CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

|  |  |
|---|---|
| ELFEGO CHAVEZ ACEVEDO,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF TEHAMA COUNTY,<br><br>Respondent;<br><br>THE PEOPLE,<br><br>Real Party in Interest. | C097689<br><br>(Super. Ct. No. 22CR1892) |

After the Tehama County District Attorney's Office (the prosecution) filed a murder charge against Elfego Chavez Acevedo (Acevedo) for a third time, he moved to dismiss the charge, relying on Penal Code sections 1387 and 1387.1.[1]  Section 1387 provides the general rule that two previous dismissals of a charge for the same offense bars the filing of a new felony charge for that offense.  But section 1387.1 provides an

---

[1] Undesignated statutory references are to the Penal Code.

1

exception to that general rule, permitting the prosecution to file a violent felony charge a third time if either of the prior dismissals were due to "excusable neglect" and the prosecution did not act in "bad faith."

After the trial court denied Acevedo's motion, he challenged the ruling by filing a petition for writ of prohibition in this court. Because we conclude the trial court did not abuse its discretion after considering the evidence, we deny the petition.

BACKGROUND

After charging Acevedo with murder in December 2020, the prosecution dismissed the charge and refiled it in February 2022. On the first day of trial in May 2022, and over Acevedo's objection, the prosecution dismissed the charge again. After the prosecution filed a murder charge against Acevedo for a third time, in August 2022, Acevedo sought to dismiss the charge, relying on sections 1387 and 1387.1. As a prosecutor later explained in written declarations and at a hearing,[2] there were two reasons for the second dismissal.

First, two weeks before the May 2022 trial the prosecution requested from the Red Bluff Police Department enlarged photographs (enlargements), which were essential to the prosecution's case. However, the enlargements were not available on time due to equipment problems at the private company responsible for creating them. The prosecution asserted that the photograph reproductions were essential because identity of the murderer was a major issue in the case: (1) no witness was willing to identify Acevedo in a photographic lineup but witnesses *were* willing to describe the murderer and confirm that the person in the pictures was the person who committed the fatal shooting; and (2) the enlargements were still photographs that came from a security

---

[2] Attorney representations to a trial court are "tantamount to sworn testimony." (*People v. Wolozon* (1982) 138 Cal.App.3d 456, 460, fn. 4; see *People v. Smith* (2003) 30 Cal.4th 581, 608, 611 [the trial court properly "accepted the district attorney's representation as an officer of the court without requiring him to testify formally" regarding that attorney's efforts to locate a witness].)

camera video showing Acevedo, with very distinctive tattoos, walking toward the scene of the crime. Similar past requests for enlargements normally took one or two days to process.

Second, the prosecution found it impossible, by the start of trial, to translate from Spanish and transcribe a recently discovered recorded statement of a key witness. The witness was the only person who heard Acevedo allegedly bragging about the murder before his arrest. In a telephone conversation with the witness a few days before trial, the prosecutor could tell the witness was afraid and reluctant to testify. Worried about the witness's future testimony, the prosecutor conducted more research and located a recorded statement the witness made to the Corning Police Department while being interviewed in an *unrelated* matter. The Corning Police Department did not investigate the murder at issue here, and never provided the witness's statement to the prosecution in connection with the murder charge. In the recorded interview, the witness "sort of out of the blue brought up issues regarding her knowledge" of the murder. The prosecution wanted to have the recorded statement transcribed and translated in case the witness's trial testimony differed from her recorded statement.

At the December 2022 hearing on Acevedo's motion to dismiss the murder charge pursuant to sections 1387 and 1387.1, defense counsel argued that neither of the prosecution's two reasons for the second dismissal were "akin to clerical mistakes," which was the relevant standard. "I don't think those are mistakes that a reasonably prudent person would make," defense counsel asserted.

Regarding the enlargements, counsel argued that so much time had elapsed between the initial filing and the second dismissal (December 2020 to May 2022) that "those issues should have been dealt with long before. I don't think the photographs that were proposed are anything new." Regarding the witness, counsel argued that while the prosecution was unaware of the recorded interview, it knew about the witness, and in any event, prosecution's knowledge is implied because it is the "head of the law enforcement team."

3

After confirming with the parties there was no material dispute regarding the first dismissal of the murder charge in February 2022, the trial court asked if the prosecutor had "any knowledge of the technical issues" regarding the photographs. "I never was able to find out," the prosecutor replied. "We kept contacting" the company, the prosecutor explained, "and they said, oh, we're just getting started on them and we'll have them tomorrow. [¶] Day or two passed, nothing would happen. The same thing would happen. And finally, right before trial, they said, actually, we're having trouble with our equipment and we don't know when they'll be ready."

The trial court inquired: "Without the photograph of the distinctive tattoos that they were producing, would it have been either difficult [or] impossible to prove identity?" To which the prosecutor responded: "I believe so, yes."

After confirming that as soon as the witness's recorded statement was discovered the prosecutor informed defense counsel and tried to get a transcript prepared, the trial court asked the prosecutor: "Without that witness, did you have any other admissions or confessions from any other witness?" "No," the prosecutor replied.

Defense counsel responded that while using the security camera video at trial would have been less convenient for the prosecution, relying on enlargements of the video footage was a convenience issue and an insufficient basis for not proceeding. As for the witness's recorded statement, defense counsel responded that the prosecution already knew about "the meat of her testimony"—that Acevedo "made admissions at some point after the killing." "What we're talking about are unrelated but somewhat related statements that were made to Corning Police Department that may or may not be admissible or relevant or whatnot."

The trial court concluded the second dismissal was due to solely excusable neglect, explaining that "in looking at excusable neglect, we look to whether . . . it was some type of malice or bad faith. And Acevedo's not arguing that it's the case of vindictiveness or bad faith; it's just arguing that it's not excusable." Regarding the enlargements, the trial court concluded the prosecution established the "photographs were

4

not only essential but" they "almost couldn't go forward with the case without them." The prosecution requested enlargements a couple weeks before trial, but the private company was not able to create them because of their equipment.

"[N]othing in bad faith of . . . the [prosecution] that they were purposely waiting to the last minute." "Yes, it would be nice if everything was prepared months before trial; but, as we all know as trial attorneys, trials are very fluid and things develop" in "the days before, and hours before" trial. "I believe that it is excusable neglect in the definition given [in] the case law," the trial court explained, "especially [when] coupled with the second reason."

Regarding that second reason—the witness's recorded statement—the trial court explained it understood the witness "was known about for some time before trial. [¶] The thing that was not necessarily known about was the feeling the prosecutor got that this witness was reluctant and afraid . . . . So that fluid situation of trying to determine or trying to be able to prove this person is testifying to something in court—in other words, maybe she recants if she's afraid to testify, that certainly is within the realm of possibility and very reasonable for a prosecutor to think if she's that afraid, she might recant, she might not come" to court.

The trial court explained it was excusable that the prosecution found out about the recorded statement so close to trial, because "it was another agency with another case, so they wouldn't necessarily know -- well, the People certainly wouldn't know, the D.A.'s office. [¶] And then the police agency would not necessarily know that in a separate case, in a separate agency, that this report would be something discoverable."

And to know what the witness said, the trial court reasoned, "you have to have it not only transcribed but interpreted to English . . . and that does take some time. [¶] And for all those reasons, the taking of that time to do the transcription and interpretation, it was . . . excusable neglect to have to dismiss this second time in order to prove the case." The trial court concluded because identity of the killer "was so important, and because

5

the sole witness for a confession was important, the [c]ourt will deny the motion to dismiss, find it was excusable neglect."

In January 2023, Acevedo filed in this court a petition for writ of prohibition and application for an immediate stay of proceedings. He argued sections 1387 and 1387.1 barred a trial on the murder charge filed against him a third time, because the prosecution did not show excusable neglect in connection with the second dismissal of the charge in May 2022. We ordered trial proceedings stayed and requested real party in interest (the People) serve and file in this court an informal written response addressing all issues raised in the petition and to address "whether and to what extent the prosecution's apparent failure to request a continuance should be considered in determining whether the dismissal was due to excusable neglect."

In their informal response the People urged us to deny the petition. In support of its response, the People included a January 2023 declaration of the prosecutor, who explained a continuance was not requested because although the trial court raised the possibility of a continuance, the People elected not to ask for a continuance because Acevedo was in custody and would not waive time. Acevedo did not file a reply and we issued an order to show cause.

DISCUSSION

In their return, the People contend there was no abuse of discretion because the trial court: (1) found credible the prosecutor's assertions the enlargements were necessary to establish Acevedo's identity as the shooter; (2) found that under the realities of a busy trial schedule, "unexpected technical problems of a private company outside of [the prosecutor's] control" was "not inexcusable"; and (3) reasonably concluded the "critical witness['s] new hesitancy to cooperate could pose a fatal defect to the People's case," and that potential defect could be remedied by the witness's "newly discovered statement," whose existence the prosecutor had no reason to know of until shortly before trial. The People also argue "the absence of a continuance request was not part of the [trial] court's excusable neglect analysis or petitioner's challenge."

6

In his reply to the return, Acevedo contends the trial court abused its discretion because the prosecution's neglect was not clerical in nature but due to "disorganization and unpreparedness." Acevedo further contends the prosecution's failure to seek a continuance "has a great deal of significance," as it goes to the prosecution's lack of diligence. We conclude the trial court did not abuse its discretion.

I

*Legal Background*

"Under section 1387, felony prosecutions are generally 'subject to a two-dismissal rule; two previous dismissals of charges for the same offense will bar a new felony charge.' [Citation.] . . . [Section 1387.1] provides an exception to the 'two-dismissal rule': it permits the prosecution to file a violent felony charge a third time if either of the prior dismissals were due to 'excusable neglect,' and the prosecution did not act in 'bad faith.' (§ 1387.1, subd. (a); see *Miller v. Superior Court* (2002) 101 Cal.App.4th 728, 739.)" (*People v. Trujeque* (2015) 61 Cal.4th 227, 255-256.) Section 1387.1, subdivision (b) explains that " 'excusable neglect' includes, but is not limited to, error on the part of the court, prosecution, law enforcement agency, or witnesses."

"Excusable neglect" is neglect that might have been the act or omission of a reasonably prudent person under the same or similar circumstances. (*Miller v. Superior Court* (2002) 101 Cal.App.4th 728, 741 (*Miller*); *People v. Massey* (2000) 79 Cal.App.4th 204, 211 (*Massey*); *People v. Woods* (1993) 12 Cal.App.4th 1139, 1149 (*Woods*).) In *Miller*, the appellate court denied a writ petition challenging the denial of a section 1387 motion to dismiss the prosecution of charges, including robbery and first degree burglary, after a third filing. (*Miller,* at pp. 734, 748.) The appellate court ruled the record supported the notion a prosecutor made reasonable efforts to secure the attendance at trial of the defendant's girlfriend (a recalcitrant witness who was also crucial to the case), who had told police the defendant confessed to her he had entered the home of an old man, pushed him to the ground, tied him up, and taken his car. (*Id.* at pp. 735, 741-742.) The prosecutor's declaration recounted repeated efforts by the

7

prosecution team to locate the girlfriend before the trial, including repeatedly calling the home telephone of her last known address and driving there at least once. (*Id.* at pp. 736, 741-742.)

In *Massey*, the appellate court ruled the trial court abused its discretion in disallowing the prosecution of a murder charge that was filed a third time. The appellate court determined that both previous dismissals resulted from excusable neglect. (*Massey, supra*, 79 Cal.App.4th at pp. 207, 211-212.) Regarding the second dismissal, the prosecution presented evidence in the trial court that a detective tried to locate witnesses and had a miscommunication with the trial prosecutor regarding the witnesses' availability for trial. (*Id.* at p. 212 [a detective "believed he had explained to the prosecutor that the witnesses were available," and "the only reasonable inference from the detective's testimony is that the prosecutor had misunderstood the detective"; "miscommunication in this context constitutes excusable neglect under section 1387.1"].)

In *Woods*, the appellate court reversed the trial court's order dismissing a murder charge filed a third time. The trial court had overruled the earlier ruling of a magistrate, who granted the prosecution's motion to file a third complaint after hearing evidence. (*Woods, supra*, 12 Cal.App.4th at pp. 1143-1144, 1147.) It is unnecessary for our purposes to recount the lengthy procedural background leading up to the second dismissal of the murder charge in the case. Important here is that the second dismissal arose due to a combination of "word processing error" *and* human error: "The first negligent omission leading to the second dismissal was" a prosecutor's "fail[ure] to read count 2 carefully enough to notice a word processing error" in the second complaint. The prosecutor "read the first count, found it complete and paid less attention to the second. She relied in part on the accuracy of the computer's retrieval capabilities. . . . A reasonably prudent person might have made the same mistake in the circumstances." (*Id.* at p. 1150.)

The appellate court found "[m]ore troubling" that same prosecutor's "failure to catch the identical error in the second information." (*Woods, supra*, 12 Cal.App.4th at

8

p. 1150.) Though the error in the second complaint "was brought to [the prosecutor's] attention by the magistrate at the preliminary hearing, who amended the pleading and held Woods to answer," the prosecutor "signed a defective information just five days later." (*Ibid.*)

This second mistake occurred because the prosecutor "assumed . . . that the problem had been cured" after she gave written instructions to a new secretary regarding the drafting of the second information. "This, of course, implies fault of another sort," the appellate court observed. (*Woods, supra*, 12 Cal.App.4th at p. 1150.) But drawing all inferences in favor of the magistrate's ruling (because the magistrate heard the evidence) (*id.* at pp. 1143-1144), the appellate court determined the prosecutor's second mistake was still excusable neglect. Because the prosecutor knew the case would be reassigned, the magistrate could infer the prosecutor "began devoting her energy to other cases" after the preliminary hearing, and "she would have been less focused on the case" when she read the second information. (*Id.* at p. 1150.)

## II

### *Analysis*

#### A.     *Standard of Review and Petitioner's Burden on Appeal*

We review the trial court's ruling for an abuse of discretion, cognizant that the trial court was required to apply a preponderance of the evidence test in the first instance. (*Miller, supra*, 101 Cal.App.4th at pp. 740-741, 748; *Massey, supra*, 79 Cal.App.4th at p. 211.) Further, when construing "remedial statutes, such as section 1387.1, . . . a lower court's decision" precluding trial on the merits should be "more carefully scrutinized than an order" allowing a trial to proceed. (*Massey*, at p. 211.)

"A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Accordingly, to the extent the decision being challenged rests upon factual findings, we must draw every legitimate inference in favor of the ruling and cannot

9

substitute our judgment, on the credibility or weight of the evidence, for that of the judicial officer who heard the evidence. (*Massey, supra*, 79 Cal.App.4th at p. 210; *Woods, supra*, 12 Cal.App.4th at pp. 1147-1148.)

"Quite similar facts might result in one trier of fact granting relief and another denying it, yet each ruling might be upheld. [Citation.] Appellate review thus respects this sometimes divergent exercise of discretion. The abuse-of-discretion standard requires us to uphold a ruling which a reasonable judge might have made, even though we would not have ruled the same and a contrary ruling would also be sustainable." (*Woods, supra*, 12 Cal.App.4th at p. 1153.)

B.      *Excusable Neglect*

We agree with the People that, considering the deferential standard of review, the trial court did not abuse its discretion in determining the prosecution's May 2022 dismissal of the murder charge was due to excusable neglect and done without bad faith. (§ 1387.1, subd. (a).) Acevedo has never asserted bad faith by the prosecution in connection with the May 2022 dismissal. As for excusable neglect, it is clear the trial court found credible the prosecutor's representations regarding the enlargements and the witness. We cannot substitute our judgment in this regard. The prosecutor's representations reflect mistakes that a reasonably prudent person under the same or similar circumstances also might have made.

Regarding the enlargements, the trial court explained that, while "it would be nice if everything was prepared months before trial[,] . . . trials are very fluid and things develop" in "the days before, and hours before" trial. Thus, the trial court ruled that because past similar requests by the prosecution took only one or two days, the prosecutor's request for preparation of enlargements made two weeks before trial was excusable neglect. That determination was reasonable.

Regarding the witness to Acevedo's alleged murder confession, the trial court explained the important thing was that the prosecutor learned the witness "was reluctant and afraid" only days before trial. That too was a "fluid situation," the trial court

10

observed. "[M]aybe [the witness] recants if she's afraid to testify, that certainly is within the realm of possibility and very reasonable for a prosecutor to think." And that possibility made a transcription of the recorded statement, after its translation to English, important for the prosecution, but difficult to do with so little time. That determination was reasonable.

The trial court's further determination that it was excusable that the prosecution found out about the recorded statement only days before trial also was reasonable. As the trial court explained, the recording came from "another agency with another case, so . . . the People certainly wouldn't know, the D.A.'s office. [¶] And then the police agency would not necessarily know that in a separate case, in a separate agency, that this report would be something discoverable." We agree with that analysis. The Red Bluff Police Department was helping the prosecution on Acevedo's murder trial. But the witness made the recorded statement to the Corning Police Department during the investigation of a matter *unrelated* to Acevedo's murder charge. (Cf. *In re Brown* (1998) 17 Cal.4th 873, 881 [In the context of *Brady v. Maryland* (1963) 373 U.S. 83, "the duty to disclose" belongs "solely and exclusively to the prosecution; those assisting the government's case are no more than its agents"]; *People v. Uribe* (2008) 162 Cal.App.4th 1457, 1475 [" '[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.' "].) The trial court did not abuse its discretion.

C. *Acevedo's Contentions*

1. "*Clerical Mistakes*"

Acevedo argues "excusable neglect" as used in section 1387.1 governs acts or omissions by the prosecution in the nature of clerical mistakes. The three cases he cites in support do not stand for that proposition.

In *People v. Rodriguez* (2013) 217 Cal.App.4th 326, the appellate court affirmed the trial court's order barring prosecution of various twice dismissed charges against the defendant. (*Id.* at pp. 328, 336.) The prosecutor had elected not to appeal the first

11

dismissal of the charges, which arose out of a motion to dismiss pursuant to section 995. (*Rodriguez*, at p. 329.) Later, when seeking to attack the merits of that earlier order in its opposition to the defendant's section 1387 motion, the prosecution "attempt[ed] to characterize the [earlier] ruling as 'excusable neglect' which might justify an additional opportunity to refile the charges under section 1387.1." (*Rodriguez*, at p. 331.) The magistrate disagreed, "explaining that he viewed the notion of 'excusable neglect' by a court to be restricted to essentially clerical errors, rather than substantive legal rulings." (*Ibid.*) The appellate court agreed with the magistrate, stating: "a *court's* 'excusable neglect' under section 1387.1 must be limited to errors which are essentially clerical in nature, and would not include the sort of legal errors which are properly reviewable on direct appeal." (*Rodriguez*, at p. 336.)

Thus, *Rodriguez* stands for the proposition that "error on the part of the court" (§ 1387.1, subd. (b)) is excusable neglect only when the error is clerical in nature. As the opinion's italicization of the word "court's" above indicates, the opinion does not stand for the proposition that "error on the part of the . . . *prosecution*, law enforcement agency, or witnesses" (*ibid.*, italics added) is excusable neglect only when clerical in nature.

Acevedo also cites *Woods* for support of the "clerical mistakes" proposition. But as explained above, *Woods* was about clerical mistakes *and* human error. (See *Woods, supra*, 12 Cal.App.4th at p. 1150.) Lastly, Acevedo cites *Tapp v. Superior Court* (1989) 216 Cal.App.3d 1030. In that case, the appellate court ruled a prosecutor's failure to file a technically correct affidavit was excusable neglect. (*Id.* at p. 1036.) Contrary to Acevedo's assertion, the *Tapp* holding does not stand for the proposition that "excusable neglect" within the meaning of section 1387.1 is limited to such "technical" errors. (Cf. *Massey, supra*, 79 Cal.App.4th at p. 212 [excusable neglect arose out of oral miscommunication between a detective and trial prosecutor].)

### 2. *Diligence*

Acevedo also argues the prosecutor was not diligent in his effort to be prepared for the May 2022 trial. "A diligent and reasonably prudent person, given almost two years

. . . would have had necessary pictures and witness statements available for trial," he contends. "It should be remembered," Acevedo argues, "that the witness was available to testify at trial and her prior statements implicating [Acevedo] were well known to all involved for almost two years."

As a threshold matter, we are not convinced that "diligence" is a necessary element for an "excusable neglect" finding by a trial court under section 1387.1, as the statute does not use the word. Acevedo invokes language in *Massey* wherein the court found "[t]he magistrate's finding of diligence is equivalent to a finding of excusable neglect under section 1387.1." (*Massey, supra*, 79 Cal.App.4th at p. 211.) But that brief discussion does not lead to the conclusion that diligence is a necessary element of excusable neglect for statutory purposes. (Cf. *Woods, supra*, 12 Cal.App.4th at p. 1150 [excusable neglect where the prosecutor's mistake occurred because she was "devoting her energy to other cases" and was "less focused on the case"].)

Further, as explained above, the trial court implicitly disagreed with Acevedo's contention that a reasonably prudent person necessarily would have had available for the May 2022 trial the enlargements and a transcription of the witness's previously unknown statement. "[T]rials are very fluid and things develop" in "the days before, and hours before" trial, the trial court observed. The prosecutor requested the enlargements two weeks before trial with the expectation it would take one or two days. And, the trial court found, the prosecutor discovered the witness's recorded statement only days before trial because of a new concern the witness was afraid to testify.

### 3. *Prosecution's Failure to Seek a Continuance*

Though we are troubled by the absence of a request for a continuance, we agree with the People that because Acevedo did not raise at the December 2022 hearing the issue of the prosecution's failure to seek a continuance, it would be inappropriate for us to consider it in our deferential review of the trial court's discretionary ruling. (Cf. *People v. Myles* (2012) 53 Cal.4th 1181, 1200 ["In assessing a claimed abuse of discretion, we assess the trial court's ruling by considering the record then before the

13

court"]; *Shank v. County of Los Angeles* (1983) 139 Cal.App.3d 152, 158 [an issue raised in the reviewing court "was not before the trial court and therefore [was] irrelevant in determining on appeal whether the court abused its discretion"].)

## DISPOSITION

The petition for writ of prohibition is denied. The previously ordered stay is vacated upon finality of this opinion. The matter is remanded for further proceedings. No costs are awarded. (See Cal. Rules of Court, rule 8.493(a).)


                                         /s/
                                   BOULWARE EURIE, J.

We concur:


     /s/
ROBIE, Acting P.J.


     /s/
EARL, J.