[No. F004161. Fifth Dist. June 11, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT E. BROWN, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exceptions of parts II and III.

COUNSEL

John P. Hannon II, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Eddie T. Keller and Sandra V. Hughes, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BROWN (G. A.), P. J.**—Robert E. Brown appeals from a judgment entered upon a plea of guilty to robbery (Pen. Code, § 211). He raises search and seizure issues and sentencing issues only, consideration of which is not precluded by his guilty plea.

### FACTS

On December 19, 1983, between 1 and 2 p.m., appellant entered the Bank of America on Truxtun Avenue in downtown Bakersfield and gave the teller

a note demanding money. He indicated to the teller that he had a gun. The teller noted he wore a tan jacket and a blue shirt. After obtaining the money, appellant ran out of the 17th Street exit from the bank, down a corridor, turned right on the sidewalk and continued to run at a rapid pace with his head down. The corridor provided access only to the bank. As appellant exited the corridor which leads to the bank, Officer Morales was on routine foot patrol on 17th Street, approximately 75 to 100 feet from the 17th Street entrance to the bank. Officer Morales was familiar with the vicinity, having patroled it for 11 months, and knew that the corridor appellant exited serviced only the bank. Morales noticed that appellant was running toward him as fast as he could and continued to look down. When appellant was approximately 15 feet from Morales, he suddenly looked up, saw Morales and immediately slowed down to a fast walk. Morales noticed that appellant appeared to be very startled, his face started to turn pale, his hands began to shake, and he did not take his eyes off of Morales. Morales testified that he had never seen anyone react as appellant did upon seeing him, and he considered it to be beyond the ordinary and very unusual.

As appellant and Morales came abreast of each other, Morales asked appellant to stop. Morales explained that he asked appellant to stop because he had come running out of the bank at full speed and his reaction upon seeing Morales was very unusual. These facts made Morales think that appellant may have just robbed the bank.

After stopping appellant, Morales asked appellant what he was doing. Appellant responded that he was jogging. However, because appellant was dressed in street clothes, a tan jacket, blue shirt, jeans and street shoes, Morales did not believe him. The officer knew there was not a park in the area, and he had never seen anyone jogging in the area. In addition to appellant's extreme nervousness and apprehension, Morales noticed a bulge about the size of a fist under the lower left side of appellant's jacket. Morales then asked appellant for identification, and appellant stated he did not have any. Because of the bulge, Morales suspected that appellant had a weapon and asked appellant to turn around and put his hands on a rail so that Morales could conduct a pat-down search.

Morales began the pat-down at appellant's shoulders and moved downward toward the bulge. As Morales' hand approached and touched the bulge, appellant began screaming "No, no, no," turned to his left and began to flee. Morales quickly grabbed appellant's left wrist, placed it behind his back, and, because appellant continued to resist and struggled to break away from the officer's grasp, threw appellant to the ground face first. The officer straddled appellant and handcuffed him. Because Morales had not completed the pat-down search, he turned appellant on his right side to continue the

search and noticed a large amount of money tucked inside appellant's jacket where the bulge was. Upon discovering the money, Morales had the police communications center contact the Bank of America to see if there had been a robbery. The bank confirmed the fact of the robbery, and the description of the robber matched that of appellant. A teller was later brought to the scene by another officer and identified appellant as the robber.

DISCUSSION

PART I

*Denial of Penal Code Section 1538.5*
*Motion to Suppress*

Appellant argues that the detention, the pat-down and the arrest of appellant were illegal and that all evidence seized as a result should have been suppressed. We disagree and will hold the detention, pat-down and search were proper. Further, we have concluded that under the peculiar facts of this case appellant was not arrested when he was thrown to the ground and handcuffed; that these latter steps were reasonable in order to maintain the status quo as a corollary of the lawful detention for the purpose of completing the pat-down.

Pursuant to *In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744], we apply federal rather than California constitutional law in determining search and seizure issues unless, of course, the rules of each jurisdiction are the same.

*Terry* v. *Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868], holds that even though a police officer may lack probable cause to arrest, he may detain and question a person on the street if the police officer is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (*Id.,* at p. 21 [20 L.Ed.2d at p. 906]; fn. omitted.) The specific and articulable facts must cause the police officer to suspect that some activity relating to crime has taken place or is occurring or about to occur, and the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so; the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience, to suspect the same criminal activity and the same involvement by the person in question. An investigatory stop or detention

predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in good faith.

There are two facts which the officer relied upon in making the stop. First, Officer Morales saw appellant come out of the corridor which leads to a downtown bank, running as fast as he could, with his head down. Next, Morales relied on appellant's reaction upon seeing Morales—his startled look, his immediately slowing down to a fast walk, his not taking his eyes off of Morales, his turning pale, and his hands shaking.

Appellant urges that Officer Morales was not aware of any criminal activity that had taken place and that appellant's reaction to the officer and his location were insufficient to give rise to a reasonable suspicion that such activity had occurred or that appellant was involved in that activity. (*People* v. *Loewen* (1983) 35 Cal.3d 117, 125 [196 Cal.Rptr. 846, 672 P.2d 436]; *People* v. *Superior Court* (*Kiefer*) (1970) 3 Cal.3d 807, 822 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559].)

In approaching these issues, we have in mind that while this court is bound by the trial court's factual findings, the issue of whether the search was constitutionally reasonable is one of law upon which this court exercises its independent judgment. (*People* v. *Loewen, supra,* 35 Cal.3d 117, 123.)

It is elementary that the constitutional issue of reasonableness must be resolved upon the facts and circumstances of each case. While it is true that, taken in isolation, running down the street or the manifestation of nervousness in the presence of a police officer would not constitute adequate grounds to detain a citizen on the street, the combination of circumstances here amounts to considerably more.

Here, the officer saw appellant leave the bank corridor which he knew provided access to the bank only, running at full speed with his head down. Appellant was not jogging but running at full speed in a downtown area, having just left the bank. As appellant came near and looked up and saw the officer, he immediately stopped running, began walking at a fast pace and continued to stare at the officer. He began turning pale and his hands began to shake. Appellant's reaction to the officer was extreme. The officer had never seen anyone react that way to him merely upon seeing the officer. The officer stopped appellant because he thought that appellant may have just robbed the bank.

Officer Morales had been a police officer for six years and had been assigned to this specific foot patrol for approximately eleven months, yet

Morales described appellant's reaction as "beyond the ordinary," "very unusual," and in fact said, "People see me and they have *never* reacted in that manner." (Italics added.) In other words, appellant's reaction to Morales was so extreme that in Morales' six years of experience as a police officer he had never seen anyone react the way appellant did when he saw Morales.

The experience of a police officer is often considered a significant factor in determining whether reasonable suspicion existed. "The key element in giving weight to police experience is the officer's ability to articulate the specific facts which, in conjunction with his experience, led him to a reasonable suspicion that criminal activity was afoot." (1 Ringel, Searches & Seizures, Arrests and Confessions (2d ed. 1984) § 13.4(a), pp. 13-22–13-24.)

We conclude that under the ambient facts and circumstances present here the officer's subjective suspicion that criminal activity was afoot and that appellant was connected with that activity was objectively reasonable under the Fourth Amendment to the United States Constitution. Accordingly, the officer had a right to detain appellant.

■ Next appellant argues that sufficient facts were not present to justify the officer's undertaking of a pat-down search. Under *Terry* v. *Ohio, supra,* 392 U.S. 1, in order to legally conduct a pat-down search a police officer must reasonably conclude that the person he has legitimately stopped might be armed and presently dangerous. (*Id.,* at p. 24 [20 L.Ed.2d at pp. 907-908].)

Officer Morales' decision to pat appellant down was based on his observation of a bulge under appellant's jacket and his experience that weapons are commonly carried under clothing in that approximate location of the waistband.

Though not cited by the parties, the United States Supreme Court case of *Pennsylvania* v. *Mimms* (1977) 434 U.S. 106 [54 L.Ed.2d 331, 98 S.Ct. 330] settles this question. In *Mimms,* after stopping a car for a traffic violation and asking the driver to step out, the police officer noticed a bulge under the driver's jacket. Based upon this observation, the police officer patted the driver down and found a .38 caliber handgun. The Supreme Court found the pat-down to be legal, saying, "The bulge in the jacket permitted

the officer to conclude that Mimms was armed and thus posed a serious and present danger to the safety of the officer. In these circumstances, any man of 'reasonable caution' would likely have conducted the 'patdown.' " (*Id.*, at p. 112 [54 L.Ed.2d at p. 338].)

*In re Lance W., supra,* 37 Cal.3d 873, requires us to follow *Mimms.* Accordingly, appellant's argument must be rejected.

Predicated on a conclusion that the officer arrested appellant when he threw him to the ground and handcuffed him, appellant argues the arrest was unauthorized because the officer did not have probable cause to arrest him at that time.

In addition to the facts which supported the initial detention—running with his head down, at full speed, from the bank, plus appellant's extreme reaction upon seeing the officer—telling facts emerged after the stop. Appellant claimed he was jogging in downtown Bakersfield, wearing street clothes, including street shoes, he was running faster than a jogger's pace, he could not produce any identification, there was a visible soft bulge under appellant's coat in the area where weapons are commonly carried in the waistband, and appellant's attempt to flee, saying, "No, no, no" when the officer approached and touched the soft bulge.

■ " 'Cause for arrest exists when the facts known to the arresting officer "would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." [Citations.]' [Citation.]" (*People* v. *DeVaughn* (1977) 18 Cal.3d 889, 895 [135 Cal.Rptr. 786, 558 P.2d 872].)

■ While the above facts could very well constitute probable cause to arrest, we need not resolve that issue as we have concluded under the peculiar facts of this case that in forcibly throwing appellant to the ground and handcuffing him the officer was exercising reasonable force to enforce the detention so the officer could complete his pat-down.

The officer testified that he threw appellant to the ground and handcuffed him "[b]ecause of [appellant's] resistance." The officer said he did not consider appellant to be under arrest at that time and that he arrested appellant only after he was identified by the bank teller.

A police officer may use reasonable force to make an investigatory stop. Many courts have held that reasonable force may, if the circumstances call for it, include the drawing of a weapon (see, e.g., *United States* v. *Jackson* (2d Cir. 1981) 652 F.2d 244; see also cases cited 1 Ringel, *supra,* § 13.5(c), pp. 13-43–13-44, fn. 114) and handcuffing the suspect (*United States* v. *Purry* (D.C.Cir. 1976) 545 F.2d 217).

The case of *United States* v. *Purry, supra,* 545 F.2d 217, is particularly on point with the instant case. In *Purry,* three masked men robbed a bank and fled. Shortly thereafter, their get-away car was found abandoned a few blocks from the bank. As police cruised the area an experienced police officer saw the defendant within a few blocks of the abandoned car, walking fast and perspiring profusely, with an excited look on his face.

The police officer stopped the defendant and briefly questioned him. The officer then told the defendant that he wanted to take him back to the bank for a "showup." The officer then placed his hand on the defendant, and the defendant "turned and pulled away." Another officer then restrained the defendant and he was handcuffed and placed in the back of a patrol car to be transported back to the bank.

On appeal, after determining that the initial stop was legal, the court said: "Having lawfully stopped Purry [the officer] was entitled 'to maintain the status quo momentarily while obtaining more information', *Adams v. Williams, supra,* [407 U.S. 143, 146] 92 S.Ct. at 1923, and in maintaining the status quo he was entitled to use reasonable force. We think the handcuffing of Purry was reasonable, as a corollary of the lawful stop. See *Terry* v. *Ohio, supra,* 392 U.S. at 27, 28, 88 S.Ct. 1868. Given [the officer's] suspicions he was entitled to obtain more information about Purry's possible implication in the holdup; and when Purry attempted to frustrate further inquiry [the officer] was not required to shrug his shoulders and allow the suspected criminal to walk away. *Adams v. Williams, supra,* at 145, 92 S.Ct. 1921. The handcuffing was an appropriate method of maintaining the status quo while further inquiry was made." (*Id.,* 545 F.2d at p. 220.)

Likewise, in the instant case, Morales had legally stopped appellant and was in the process of conducting a legal frisk when appellant started to run. Even after Morales placed appellant's arm behind his back he continued to resist. Under these circumstances, Officer Morales was entitled to use reasonable force in order "to maintain the status quo momentarily while obtaining more information." Morales certainly was not required to shrug his shoulders and allow appellant to run away. Therefore, the physical restraint and handcuffing represent reasonable force designed to maintain the status quo while Morales completed the pat-down and obtained more information.

Accordingly, we conclude that the officer's conduct in using the force described was reasonable and fully justified.

## PART II*

. . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Woolpert, J., and Ivey J.,† concurred.

Appellant's petition for review by the Supreme Court was denied August 21, 1985.

*See footnote *ante,* page 159.
†Assigned by the Chairperson of the Judicial Council.