Filed 12/8/23  P. v. Fortson CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B325044 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. YA104713) |
| v. | |
| MICHEAUX FORTSON, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Nicole C. Bershon, Judge.  Affirmed.

George Gascon, District Attorney, Cassandra Thorp and Kenneth Von Helmolt, Deputy District Attorneys, for Plaintiff and Appellant.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Respondent.

————————————

# INTRODUCTION

Micheaux Fortson was detained at gunpoint, handcuffed, and frisked by Los Angeles County sheriff's deputies after they saw him jaywalk at approximately 3:40 a.m. in Inglewood. After searching Fortson, the deputies recovered an unregistered, loaded firearm from a fanny pack Fortson was wearing and Fortson, who has prior felony convictions, was charged with gun possession. Fortson was not charged with jaywalking.

Fortson moved to suppress the evidence of the firearm and his statement he had a gun as products of an illegal search and seizure, arguing the deputies seized him in an unreasonable manner and without reasonable suspicion he was armed and dangerous. The People contended the deputies had reasonable suspicion Fortson was armed and dangerous because Fortson was present in a "high crime area," he "quickly walked" away upon seeing the deputies, and when approached, he "bladed his body" to shield his fanny pack from the deputies' view.

Hearing testimony from the arresting deputy and reviewing video from his body camera, the magistrate judge ruled there was no reasonable suspicion Fortson was armed and dangerous and Fortson's seizure was unreasonable under the circumstances. The magistrate judge granted the motion to suppress and dismissed the criminal complaint. The People filed a Penal Code[1] section 871.5 motion in superior court to reinstate the complaint. The superior court denied the People's motion. We affirm.

---

[1]     Statutory references are to the Penal Code unless otherwise noted.

# FACTUAL AND PROCEDURAL BACKGROUND

A.   *Fortson's Seizure and Search*

At 3:40 a.m. on October 15, 2021 Los Angeles County Sheriff's Deputy Justin Sabatine and his partner, Deputy Quinones, were on patrol in a marked black and white patrol car in the 600 block of Manchester Avenue in Inglewood. Deputy Quinones drove the patrol car into a Best Western Hotel parking lot. Deputy Sabatine, testifying at the suppression hearing, characterized the location as a "high crime area." As the deputies drove into the hotel parking lot, Deputy Sabatine saw Fortson "leisurely walking" eastbound through the lot, toward the hotel's breezeway. Deputy Sabatine testified that on making eye contact with the deputies, Fortson continued in the direction he was walking, exiting the hotel parking lot towards Manchester Boulevard, but increased his pace for a "couple seconds" "just briefly."

Deputy Sabatine stated the high crime location, the early morning hour, and Fortson's reaction upon seeing the officers drew his attention. Deputy Sabatine lost sight of Fortson when Fortson reached the street. But after Deputy Quinones made a U-turn and exited the hotel parking lot, Deputy Sabatine saw Fortson walking away "quickly" in a northbound direction. He observed Fortson "jaywalking" across the westbound traffic lanes of Manchester Boulevard outside the marked crosswalk. According to Deputy Sabatine, a marked crosswalk was nearby where Fortson could have legally crossed the street. Fortson continued to "walk[] fast" northeast through the parking lot of a shopping complex on the other side of Manchester Avenue. Deputy Sabatine testified Fortson was "not running."

3

Upon witnessing Fortson jaywalk, Deputy Sabatine determined Fortson had violated the California Vehicle Code.[2] He decided to stop Fortson to give him a citation for jaywalking and "to figure out why he was quickly walking away from us on observing us." The patrol car drove through the shopping complex parking lot and pulled up behind Fortson, with Fortson to the right of the car. Deputy Sabatine testified that, as the patrol car approached, he ordered Fortson to stop. Fortson took one more step and stopped. Deputy Sabatine exited the patrol car with his firearm drawn and pointed at Fortson.

As he approached, Deputy Sabatine observed Fortson wore a fanny pack strapped across his chest and "assumed there was a gun in that fanny pack," relying on his experience that "it's common for individuals to conceal weapons inside of these fanny packs." Deputy Sabatine testified Fortson "bladed his body," turning his shoulders "to where you can no longer see half of his body," while holding "his hands a little bit above his waist." Deputy Sabatine testified he found this movement suspicious because "[i]nstead of [Fortson] turning his chest to face me to look at me like a normal person would, he bladed his shoulders to the side, which turned his fanny pack away from my view." Deputy Sabatine told Fortson "to put his hands up and put his hands

---

[2]     In October 2021 at the time Fortson was arrested, jaywalking was punishable by fine or citation pursuant to Vehicle Code sections 21954 and 21955. As of January 1, 2023, Vehicle Code section 21955 no longer criminalizes jaywalking when it is not hazardous or risky, or there are no cars present; law enforcement may cite pedestrians in situations only where a reasonably careful person would realize there is immediate danger of collision. (See Veh. Code, § 21955; see also Assem. Bill No. 2147 (2021-2022 Reg. Sess.) § 11.)

4

behind his back," and Fortson complied. Deputy Sabatine took Fortson's wrists and pushed Fortson's hands behind his back. Deputy Sabatine testified he asked Fortson "if he had a pistol in his fanny pack, and he somewhat nodded his head up and down, which indicated 'yes' to me."

Deputy Sabatine's partner, Deputy Quinones, patted the outside of Fortson's fanny pack and felt a gun inside. Deputy Quinones removed a loaded, unregistered Smith & Wesson .40 caliber semiautomatic handgun from the fanny pack. Deputy Sabatine checked Fortson's criminal history and learned he was on active probation with search conditions and prior felony convictions.

B.      *The Preliminary Hearing*

Fortson was arrested and charged in a three-count felony complaint. Count 1 charged Fortson with carrying a concealed unregistered firearm (§ 25400, subd. (a)(2)); count 2 with carrying a loaded firearm in public (§ 25850, subd. (a)); and count 3 with possessing a firearm as a felon (§ 29800, subd. (a)(1)).[3] Fortson was not charged with jaywalking. Fortson filed a motion to suppress the gun and his statement he had a gun.

---

[3]      For sentencing purposes, the information also alleged two prior serious or violent felony convictions requiring a prison sentence (§§ 667.5, subd. (c), 1170, subd. (h)(3), and 1192.7, subd. (c)); two prior serious or violent felony convictions requiring an indeterminate term of life imprisonment (§§ 667, subds. (b)-(j), and 1170.12); and four prior felony convictions precluding a probation sentence (§ 1203, subd. (e)(4)).

On June 24, 2022 the magistrate judge[4] held a preliminary hearing at which the court heard the suppression motion. Deputy Sabatine was the sole prosecution witness, and he testified concerning the circumstances leading to Fortson's stop, search, and arrest. The court admitted the People's exhibit, a certified rap sheet showing Fortson's prior felony convictions, and the defense's exhibit, a DVD of video and audio taken from Deputy Sabatine's body camera that partially recorded Fortson's detention.[5]

Fortson's counsel conceded Fortson had jaywalked and that a brief detention for jaywalking was generally legally permissible, but he argued Fortson's detention at gunpoint transformed the detention into an illegal stop because the officers did not have reasonable suspicion that Fortson was armed and dangerous. Fortson's counsel argued there was no reasonable suspicion "for this deputy under the circumstances to believe that Mr. Fortson is armed and dangerous. There's no real reason to point a gun at him during a simple traffic citation. . . . The point where the gun is pointed at Mr. Fortson . . . the detention becomes illegal, and anything obtained after the gun was pointed at Mr. Fortson should be suppressed." Fortson did not argue the

---

[4] The Honorable Victor L. Wright.

[5] There is a 60-second delay after Deputy Sabatine's body camera is activated and before it begins to record audio, so there is no sound at the beginning of the recording. Deputy Sabatine testified this silent portion of the video included the part of the detention when he directed Fortson to stop. Deputy Sabatine further testified that because of the timing of the recording and the angle of the camera not all of Fortson's conduct is visible on the video, including Fortson "blading his body."

6

stop was motivated by racial profiling or any other discriminatory factor.

The prosecutor argued the stop was justified based on the deputies witnessing the jaywalking offense. The prosecutor also argued the subsequent search did not violate the Fourth Amendment because Deputy Sabatine had a reasonable suspicion Fortson was armed and dangerous, based on the way he "bladed" his body and Fortson's later admission he had a firearm.

The magistrate judge granted Fortson's motion to suppress. The magistrate judge found that Fortson jaywalked across the street. But the magistrate judge further ruled Deputy Sabatine lacked reasonable suspicion Fortson was armed, and stated that "the result [of the search] confirms suspicions that Mr. Fortson had a firearm in his possession, but the basis of that suspicion I think was improper." The magistrate judge rejected Deputy Sabatine's testimony that the "high-crime area," his "eye contact with Mr. Fortson," and the fact Fortson jaywalked supported reasonable suspicion he was unlawfully carrying a firearm. Although the magistrate judge did not expressly state as much, the magistrate judge implicitly found Deputy Sabatine's testimony lacked credibility.

The magistrate judge further ruled Fortson's detention was unreasonable in the context of jaywalking. Because "Mr. Fortson almost immediately [was] given directions to . . . stop and the firearm is pulled out," the magistrate judge determined the stop was "[n]othing in terms of what I would consider to be a normal contact to give someone a jaywalking citation." The magistrate judge concluded the deputies' contact with Fortson was not "reasonable under those circumstances"—rather, "the contact should be, 'Hey, stop. We need to talk to you. We're going to

7

write you a citation.'" Finally, the magistrate judge determined that Fortson did not "blade his body" to conceal the fanny pack, but instead "in response to being contacted by the officers when they told him to stop. He's walking northeast. He hears these words presumably from behind him. Stops; he turns. By turning, he's going to be blading his body."

The magistrate judge also questioned Deputy Sabatine's motives for stopping Fortson. Because Deputy Sabatine chose to follow Fortson before he jaywalked, the magistrate judge determined the stop for jaywalking was "pretextual." The magistrate judge further commented, "I think there's a lot of things in Deputy Sabatine's mind, perhaps . . . that time of night, that location, prior experiences there and the presence and, you know, I have to say it, the presence of a black man walking through that area at that time of night. I think that probably accelerated things in Deputy Sabatine's mind. Doesn't make him a bad person or anything like that. It's just the way things are."[6]

The magistrate judge granted Fortson's motion to suppress. The prosecution conceded it could not proceed without the suppressed evidence, and the magistrate judge dismissed the criminal complaint.

---

[6] The magistrate judge further stated during other parts of the preliminary hearing that, "I'm afraid of sheriff's deputies in this area. I'm afraid of sheriff's deputies in my area, and they used to come to my house routinely, and I would work with sheriff's deputies on a daily basis." He also shared a personal anecdote about receiving a citation for jaywalking under different circumstances—during the day, while he was dressed in business attire. He offered that his interaction with the police on that occasion did not involve a search or the officer drawing a weapon.

C.    *The People's Motion To Reinstate the Information*

On July 7, 2022 the People filed a motion to reinstate the charges against Fortson under section 871.5.  The People argued the deputies could lawfully detain Fortson for jaywalking and search him given his conduct and pre-search affirmation that he was armed.  The People further asserted the magistrate judge erred by considering Deputy Sabatine's subjective intent and injecting the magistrate judge's personal views into the analysis.  For these reasons, the People argued the stop and search were objectively reasonable under the circumstances.

Fortson opposed the motion, arguing: (1) the prosecutor failed to prove Fortson violated the Vehicle Code when he crossed Manchester Boulevard; (2) Fortson's detention exceeded the scope of a stop for jaywalking; and (3) the search was unjustified as a lawful search incident to arrest because Fortson was searched before he was arrested.  In the reply brief, the People argued Fortson could have been lawfully arrested for jaywalking and legally searched incident to his arrest.

The superior court denied the People's motion to reinstate the complaint.  At the hearing on the motion, the court confirmed that "it's clear [the magistrate judge] found [Fortson] had jaywalked."  The superior court then ruled, contrary to the magistrate judge, that the stop for jaywalking was permissible, but that the search violated the Fourth Amendment.  The court further determined there was "no indication [the deputies] were going to arrest him for jaywalking[,]" so the search could not be justified as a search incident to arrest.  The superior court determined suppression was proper because the magistrate judge rejected Deputy Sabatine's testimony about Fortson "blading his body," and this movement did not establish reasonable suspicion

9

Fortson was armed and dangerous. The superior court also noted the magistrate judge did not find the deputy's testimony credible. The superior court ruled the search was unlawful and denied the People's motion to reinstate the complaint.

The People filed a timely notice of appeal from the denial of their motion to reinstate.

## DISCUSSION

A. *Standard of Review*

Section 871.5 provides "the exclusive method by which the People may obtain a review of a magistrate's order of dismissal" (*People v. Mimms* (1988) 204 Cal.App.3d 471, 481) by requesting reinstatement of the complaint. (*People v. Massey* (2000) 79 Cal.App.4th 204, 210 (*Massey*).) Section 871.5 does not permit "a *relitigation* of the defendant's suppression motion. Instead, it is simply a means to have the superior court determine the legal propriety of the magistrate's dismissal of the complaint." (*People v. Toney* (2004) 32 Cal.4th 228, 233; accord, *People v. Shrier* (2010) 190 Cal.App.4th 400, 409-410 (*Shrier*).)

On appeal from an order denying the People's section 871.5 motion to reinstate the complaint, "'we disregard the superior court's ruling and directly examine the magistrate's ruling to determine if the dismissal of the complaint was erroneous as a matter of law.'" (*Shrier*, *supra*, 190 Cal.App.4th at pp. 409-410, italics omitted.) "To the extent the magistrate's decision rests upon factual findings, '[w]e, like the superior court, must draw every legitimate inference in favor of the magistrate's ruling and cannot substitute our judgment, on the credibility or weight of the evidence, for that of the magistrate.'" (*Massey*, *supra*,

10

79 Cal.App.4th at p. 210.)  We affirm the magistrate judge's suppression ruling "if it is correct on any theory of law applicable to the case, even if for reasons different than those given by the trial court."  (*People v. Evans* (2011) 200 Cal.App.4th 735, 742.)

B.    *The Magistrate Judge Correctly Granted Fortson's Suppression Motion Because He Was Unreasonably Seized in Violation of the Fourth Amendment*

The Fourth Amendment guarantees the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures by police officers and other government officials.  (See *People v. Robles* (2000) 23 Cal.4th 789, 794-795.)  Here, the parties agree Fortson was "seized" within the meaning of the Fourth Amendment when he complied with Deputy Sabatine's order to stop.  (*People v. Brown* (2015) 61 Cal.4th 968, 974 ["'[W]hen [an] officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen,' the officer effects a seizure of that person, which must be justified under the Fourth Amendment."].)  We examine whether Fortson's seizure and the resulting search complied with the Fourth Amendment.

1.    *Deputy Sabatine Had Reasonable Suspicion To Initiate a* Terry *Stop Relating to Jaywalking*

Consistent with the Fourth Amendment, a police officer may "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." (*Illinois v. Wardlow* (2000) 528 U.S. 119, 124 (*Wardlow*), citing *Terry v. Ohio* (1968) 392 U.S. 1, 27 (*Terry*).)  "[T]he touchstone of reasonableness" for an investigatory stop under *Terry* "is the

11

presence of 'specific and articulable facts' that reasonably warrant the intrusion on personal liberty and privacy." (*People v. Glaser* (1995) 11 Cal.4th 354, 374.)

Deputy Sabatine testified he detained Fortson for the purpose of issuing him a jaywalking citation. Because he witnessed Fortson jaywalking, Deputy Sabatine had reasonable suspicion to stop Fortson to investigate jaywalking in violation of the Vehicle Code. "A *Terry* stop is justified if it is based on at least reasonable suspicion that the individual has violated the Vehicle Code or some other law." (*In re H.M.* (2008) 167 Cal.App.4th 136, 142.) When an officer personally witnesses a traffic infraction such as jaywalking (see § 853.5; Veh. Code, § 21955; ), the officer has reasonable suspicion to detain the person. (*In re H.M.*, at p. 142.; accord, *People v. Superior Court* (1980) 111 Cal.App.3d 948, 953.) Deputy Sabatine testified, and the magistrate judge found, that Fortson jaywalked across Manchester Boulevard. It was proper to initiate a stop of Fortson on this basis.[7]

---

[7] For the first time on appeal, Fortson contends based on the magistrate judge's remarks that his stop was the result of racial profiling, and that the magistrate judge applied principles from the California Racial Justice Act (CRJA). The CRJA provides: "The state shall not seek or obtain a criminal conviction or seek, obtain, or impose a sentence on the basis of race, ethnicity, or national origin." (§ 745, subd. (a).) The court in *Young v. Superior Court* (2022) 79 Cal.App.5th 138 held the CRJA can provide a remedy for racially motivated stops by law enforcement. (*Id. at pp.* 161-162.) Recent amendments to the CRJA, effective January 1, 2024, permit a defendant to raise it for the first time on direct appeal. (See Assem. Bill No. 1118 (2022-2023 Reg. Sess.); Stats. 2023, ch. 464, § 1.) Since we affirm

But Deputy Sabatine did not have reasonable suspicion to initiate a *Terry* stop based on criminal activity other than jaywalking that could have made it permissible to draw his weapon. Deputy Sabatine testified he stopped Fortson to investigate potential unspecified criminal activity because Fortson was present in a "high-crime location," in the early morning, and Fortson "picked up [his] pace" after seeing the deputies. Deputy Sabatine further testified, however, that Fortson never broke into a run and Fortson continued to walk in the same direction he was walking before he saw the patrol car.

Under the circumstances of this case, these facts cannot establish reasonable suspicion of criminal activity other than jaywalking. In *Wardlow, supra,* 528 U.S. 119, the U.S. Supreme Court held that a person's "unprovoked," "[h]eadlong flight" from police in a "high crime area" constituted reasonable suspicion and justified an investigatory stop under *Terry*. (*Id.* at pp. 124-125.) But Fortson was walking quickly in the same direction he was already walking in, away from the deputies, which is not "headlong flight." (*People v. Flores* (2019) 38 Cal.App.5th 617, 632 ["'unprovoked headlong flight' is not a 'brisk walk,' or a 'quick pace'"]; *Cornell v. City and County of San Francisco* (2017) 17 Cal.App.5th 766, 782 [affirming no reasonable suspicion to detain a person "already walking away" from police because no "[h]eadlong flight"].) Fortson's "presence in a 'high crime area,' standing alone, [was] not enough to support a reasonable, particularized suspicion of criminal activity." (*Wardlow, supra,*

the magistrate judge's suppression ruling on Fourth Amendment grounds, however, we need not reach Fortson's CRJA argument. Further, the magistrate judge's remarks on racial profiling play no part in our decision today.

528 U.S. at p. 119; accord, *People v. Souza* (1994) 9 Cal.4th 224, 241 [emphasizing "mere presence in a high crime area" is not "'sufficient to justify interference with an otherwise innocent-appearing citizen'"].) Considering these factors as a whole, they do not provide reasonable suspicion to initiate a *Terry* stop for unspecified criminal activity beyond jaywalking. (See *People v. Wilkins* (1986) 186 Cal.App.3d 804, 811 ["police avoidance behavior, the reputation of the area for crime, and time of night" were insufficient for reasonable suspicion]; *People v. Aldridge* (1984) 35 Cal.3d 473, 478 [no reasonable suspicion where "defendant and his companions apparently sought to avoid the police" at "nighttime . . . 'in an area of continuous drug transactions'"].)

2. *The Deputies Exceeded the Permissible Scope of the* Terry *Stop Through Unreasonably Intrusive Conduct Approaching Arrest*

While the deputies had reasonable suspicion to initiate a *Terry* stop for jaywalking, a traffic infraction, we conclude the unreasonably intrusive nature of the stop—where one of the two arresting officers drew his weapon and physically restrained Fortson—contravened the Fourth Amendment.

a. *Drawing weapons and physically restraining a detainee for an ordinary traffic infraction violates the Fourth Amendment*

Even if specific facts support reasonable suspicion of criminal activity, a *Terry* stop may violate the Fourth Amendment when "officers' conduct was more intrusive than necessary to effectuate an investigative detention otherwise

14

authorized by the *Terry* line of cases." (*Florida v. Royer* (1983) 460 U.S. 491, 504.) For this reason, "[t]he scope of [a] detention must be carefully tailored to its underlying justification." (*Id.* at pp. 499-500.) "The detention must be temporary, last no longer than necessary for the officer to confirm or dispel the officer's suspicion, and be accomplished using the least intrusive means available under the circumstances." (*People v. Stier* (2008) 168 Cal.App.4th 21, 26 (*Stier*).) There is no "litmus-paper test" for "determining when a seizure exceeds the bounds of an investigative stop." (*Royer,* at p. 506.) Instead, "[t]he scope of the intrusion permitted during a detention will vary with the particular facts and circumstances of each case." (*Stier*, at p. 27.) One consideration is "the facts known to the police officer at the time of the detention to determine whether the officer's actions went beyond what was necessary to confirm or dispel the officer's suspicion of criminal activity." (*Ibid.*)

As noted above, Deputy Sabatine testified he detained Fortson for the purpose of issuing him a jaywalking citation, and the deputy did not possess reasonable suspicion of any other crime at that time. "An investigation relating to the detention required to issue a warning or citation for a minor traffic or vehicle equipment violation is limited in scope." (*People v. Grace* (1973) 32 Cal.App.3d 447, 452.) Generally, all that is "'reasonably necessary'" to deal with a traffic infraction is for an officer to examine the detainee's identification, "explain the violation, and then issue either a citation or a warning." (*People v. McGaughran* (1979) 25 Cal.3d 577, 587; accord, *United States v. Luckett* (9th Cir. 1973) 484 F.2d 89, 91 [police may "detain an individual stopped for jaywalking only [for] the time

15

necessary to obtain satisfactory identification from the violator and to execute a traffic citation"].)

A "routine traffic stop" will "rarely justify a police officer in drawing a gun" (*People v. Celis* (2004) 33 Cal.4th 667, 676) or physically restraining a detainee.  (See *People v. Medina* (2003) 110 Cal.App.4th 171, 176 (*Medina*) [individual "stopped for a minor traffic infraction cannot be physically restrained absent "'specific and articulable facts" that could support a rational suspicion that [the person was] involved in "some activity relating to crime""' beyond the traffic infraction]; accord, *Stier, supra*, 168 Cal.App.4th at p. 27; *Washington v. Lambert* (9th Cir. 1996) 98 F.3d 1181, 1187 ["Under ordinary circumstances, when the police have only reasonable suspicion to make an investigatory stop, drawing weapons and using handcuffs and other restraints will violate the Fourth Amendment."]; *People v. Campbell* (1981) 118 Cal.App.3d 588, 595-596 [detention may be unconstitutionally unreasonable "if the restraint employed by the police goes beyond that which is reasonably necessary for a detention"].)

        b.     *The use of force was not justified by reasonable suspicion Fortson was armed and dangerous*

The People argue that drawing a firearm and physically restraining Fortson was reasonably necessary to effectuate the *Terry* stop because Deputy Sabatine reasonably suspected Fortson was armed and dangerous.  The law recognizes that if, "at the time of the detention, the officer had a reasonable basis to believe the detainee presented a physical threat to the officer," drawing weapons on or physically restraining a detainee during an investigatory stop does not violate the Fourth Amendment.

16

(*In re Antonio B.* (2008) 166 Cal.App.4th 435, 442 [restraints]; accord, *People v. Brown* (1985) 169 Cal.App.3d 159, 167 [drawing a weapon].)  The People contend the following circumstances provided reasonable suspicion Fortson was armed:  (1) Fortson's "nervous and evasive response to the patrol car;" (2) Fortson's fanny pack, "in which Deputy Sabatine knew people often concealed weapons"; and (3) Fortson's movement "blading his body" when turning to face the deputies, which suggested Fortson was concealing the fanny pack from their view.  According to the People, because Deputy Sabatine reasonably suspected Fortson was carrying a firearm, he could detain Fortson with force and subsequently frisk him for weapons.

The Fourth Amendment authorizes ""'a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime.  The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.''"  (*People v. Pantoja* (2022) 77 Cal.App.5th 483, 488 (*Pantoja*).)  Circumstances supporting reasonable suspicion a suspect is armed "typically include visible bulges or baggy clothing that suggest a hidden weapon; sudden movements or attempts to reach for an object that is not immediately visible; evasive and deceptive responses to an officer's questions about what the individual was doing; and unnatural hand postures that suggest an effort to conceal a weapon.  [Citation.]  Other relevant circumstances can include the type of crime at issue; the detained individual's suspected involvement in such a crime; and the

17

searching officer's experience with such crimes." (*In re Jeremiah S.* (2019) 41 Cal.App.5th 299, 305.)

The People place great emphasis on Deputy Sabatine's testimony that Fortson "bladed his body" to hide the fanny pack from his view. "[S]udden movements," "attempts to reach for an object that is not immediately visible," or "unnatural hand postures that suggest an effort to conceal a weapon" all support reasonable suspicion a detainee is armed. (*In re Jeremiah S.*, *supra*, 254 Cal.App.5th at p. 305.) The People's contention that Fortson "bladed his body" is belied by the magistrate judge's factual and credibility findings. The magistrate judge expressly rejected Deputy Sabatine's testimony that Fortson "bladed his body" to conceal the fanny pack. The magistrate judge found instead that Fortson did not move with the purpose of hiding the fanny pack. Rather, Fortson heard Deputy Sabatine's command to stop "from behind him," stopped and turned around, and "[b]y turning, he's going to be blading his body." Further, it was clear from Deputy Sabatine's testimony and from the body camera footage that Fortson made no other suspicious movements toward the fanny pack, his hands were visible at all times, and he immediately complied with the deputy's orders to stop and raise his hands in the air.

Based on our independent review of the preliminary hearing transcript and the body camera video, the People's other arguments for reasonable suspicion Fortson was armed and dangers are unpersuasive under the circumstances of this case. First, the non-violent offense of jaywalking does not provide reasonable suspicion Fortson was armed. (See *In re H.H.* (2009) 174 Cal.App.4th 653, 660 [no reasonable suspicion where the defendant "was stopped for a traffic infraction, not a crime of

18

violence"].)  Next, as to Fortson's "nervous and evasive behavior," nervousness does not necessarily establish reasonable suspicion that a detainee is armed.  (See *People v. Dickey* (1994) 21 Cal.App.4th 952, 956; *People v. Lawler* (1973) 9 Cal.3d 156, 162 ["nervousness could understandably result from extended police questioning because of a 'traffic violation'"].)

That Fortson wore a fanny pack does not establish reasonable suspicion he was armed.  Merely wearing clothes or accessories that could possibly conceal a weapon—without additional facts like a visible bulge in the clothing or a detainee reaching into their clothing or bag—does not establish reasonable suspicion a detainee is armed and dangerous.  (See *People v. Thomas* (2018) 29 Cal.App.5th 1107, 1117 ["wearing a jacket or sweatshirt on a 'pretty warm' day" does not support reasonable suspicion detainee was armed]; *People v. Collier* (2008) 166 Cal.App.4th 1374, 1377, fn. 1 [police do not have "carte blanche to pat down anyone wearing baggy clothing"]; *Ybarra v. Illinois* (1979) 444 U.S. 85, 93 [wearing a long jacket, without more, insufficient to support reasonable suspicion]; *People v. Lopez* (2004) 119 Cal.App.4th 132, 137 [reasonable suspicion of weapon where uncooperative detainee wore "loose, baggy pants" and "refused to keep his hands away from his pocket"]; *In re Frank V.* (1991) 233 Cal.App.3d 1232, 1241 [same, with detainee in "heavy coat" "starting for his pockets"].)  Although Deputy Sabatine testified that, in his experience, "it's common for individuals to conceal weapons inside of these fanny packs," this did not establish reasonable suspicion particular to Fortson.  (Cf. *People v. Hernandez* (2008) 45 Cal.4th 295, 299 ["no articulable facts supporting a reasonable suspicion that [defendant], in particular, may have been acting illegally" by driving with a

temporary permit, even though officer knew from experience "that some people driving with a temporary permit may be violating the law"].)

Considering all these circumstances in their totality, they fall short of reasonable suspicion Fortson was armed.[8] (See *Pantoja, supra,* 77 Cal.App.5th at pp. 487, 490-491 [no reasonable suspicion of weapons on a "'nervous'" but "cooperative" person detained on vehicle infractions in a "high crime area" while wearing "baggy" clothing].) Because Deputy Sabatine possessed only reasonable suspicion of jaywalking and lacked reasonable suspicion Fortson was armed, we conclude Fortson's detention at gunpoint while physically restrained was unduly intrusive and unreasonable. (See *Stier, supra,* 168 Cal.App.4th at pp. 25, 28 [unreasonable seizure to restrain a suspect for a Vehicle Code violation without any reasonable suspicion of weapons]; accord, *In re Antonio B., supra,* 166 Cal.App.4th at p. 442 [marijuana misdemeanor]; *Medina, supra,* 110 Cal.App.4th at p. 177 [traffic infraction]; cf. *People v. Saldana* (2002) 101 Cal.App.4th 170, 173, 176 (*Saldana*) [illegal seizure at gunpoint and with handcuffs on a nonviolent misdemeanor warrant].)

Since Fortson's seizure was beyond what is permissible under the Fourth Amendment, the evidence obtained was

---

[8]     The People also argue Deputy Sabatine's reasonable suspicion Fortson was armed justified the subsequent pat-down for weapons, revealing the gun in Fortson's fanny pack. Because we conclude Deputy Sabatine had no reasonable suspicion Fortson was armed to justify detaining him at gunpoint and physically restraining him, we also conclude Deputy Sabatine had no reasonable suspicion justifying a pat-down for weapons. (See *Medina, supra,* 110 Cal.App.4th at pp. 176-177.)

properly suppressed.  (See *People v. Harris* (1975) 15 Cal.3d 384, 392 ["It is a fundamental principle in our jurisprudence that an illegal police procedure cannot be justified by its fruits."].)

3.     *The Search-incident-to-arrest Exception Does Not Apply*

The People argue that because Deputy Sabatine could have formally arrested Fortson for jaywalking, he could have searched Fortson incident to the arrest and would have discovered the gun. Consistent with the Fourth Amendment, an officer may effect a custodial arrest for a minor traffic infraction such as jaywalking. (See *Atwater v. City of Lago Vista* (2001) 532 U.S. 318, 354.)  The search-incident-to-arrest exception allows officers to conduct a full search alongside any custodial arrest.  (See *People v. Monroe* (1993) 12 Cal.App.4th 1174, 1195 (*Monroe*).)  This exception does not justify Fortson's detention and frisk.

Generally, an officer may not arrest an individual for traffic infractions, including jaywalking; rather, an officer must cite and release any person who provides identification and signs a notice to appear.  (See Veh. Code, §§ 21955, 40302, 40500; Pen. Code, § 853.5; see *Monroe, supra*, 12 Cal.App.4th at pp. 1181-1182.) And, when an officer chooses to cite a detainee for a traffic infraction, the Fourth Amendment does not permit a "search incident to citation," even if the officer could have arrested the detainee for the offense cited.  (*Knowles v. Iowa* (1998) 525 U.S. 113, 115-119.)  Although an officer may have "probable cause to arrest for a traffic infraction," "[o]nce it [is] clear that an arrest [is] *not* going to take place, the justification for a search incident to arrest [is] no longer operative" and the exception does not apply.  (*People v. Macabeo* (2016) 1 Cal.5th 1206, 1218-1219

21

(*Macabeo*), citing *Knowles v. Iowa, supra*, 525 U.S. at pp. 114, 117.)

Deputy Sabatine testified he approached Fortson to "detain him for the purposes of giving him a citation" for jaywalking, not to effect a custodial arrest for that infraction. While the deputies' overly intrusive seizure of Fortson approached the conditions of arrest, Deputy Sabatine testified the jaywalking played no part in his decision to approach Fortson at gunpoint and restrain him with handcuffs.[9] And critically, Deputy Sabatine testified he arrested Fortson only after discovering the gun.

There is nothing in the record "to suggest, as the People's argument presumes, that the officers would have arrested" Fortson for jaywalking. (*Macabeo, supra*, 1 Cal.5th at pp. 1212, 1219 [search unconstitutional even though the defendant "*could have been* arrested for failing to stop at a stop sign"]; accord, *People v. Espino* (2016) 247 Cal.App.4th 746, 765 [unlawful search even when police "could have arrested and searched [defendant] based on the traffic violation—but they did not"]; cf. *In re D.W.* (2017) 13 Cal.App.5th 1249, 1253 [declining to apply search-incident-to-arrest exception "because when officers decided to search [defendant], they had neither cause to make a custodial arrest nor evidence that he was guilty of anything more

---

[9] The magistrate judge likewise rejected the argument that Deputy Sabatine arrested Fortson because of jaywalking, observing that a jaywalking investigation does not "happen at gunpoint." (See *Saldana, supra*, 101 Cal.App.4th at p. 176, fn. 4 [rejecting analysis of illegal seizure "as if it were a traffic stop on an outstanding warrant," because trial court found overly intrusive seizure via "'felony extraction'" indicated "the officers didn't put an awful lot of weight on" the misdemeanor warrant].)

than an infraction"].)  The search-incident-to-arrest exception does not apply.

Accordingly, the magistrate judge correctly granted the motion to suppress and properly dismissed the complaint.  (See *Medina, supra,* 110 Cal.App.4th at pp. 178-179 [affirming suppression of a defendant's admission he had cocaine while he was illegally detained and questioned]; *Willett v. Superior Court* (1969) 2 Cal.App.3d 555, 559 [ordering suppression of "information learned well after [the defendant's] detention had exceeded constitutional limitations"].)

## DISPOSITION

The order denying the People's section 871.5 motion to reinstate the complaint is affirmed.

MARTINEZ, J.

We concur:

SEGAL, Acting P. J.                    EVENSON, J.*

---

*       Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.