Filed 12/30/24  P. v. Daniel CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> DAMONE DESHOWN DANIEL, <br><br> Defendant and Appellant. | B333911 <br><br> (Los Angeles County Super. Ct. No. SA105756) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Christopher W. Dybwad, Judge.  Affirmed.

Katharine Eilleen Greenbaum, under appointment by the Court of appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Jonathan M. Krauss and Lauren N. Guber, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Following the denial of his motion to suppress evidence, Damone Deshown Daniel pleaded no contest to transporting a controlled substance (Health & Saf. Code, § 11379, subd. (a)) and being a felon in possession of a firearm (Pen. Code, § 29800, subd. (a)(1)). On appeal Daniel contends the trial court erred by denying his motion to suppress a glass narcotics pipe found in his pocket during a patdown search and the items subsequently found in his vehicle during a search incident to arrest. Daniel argues the Los Angeles County deputy sheriff who detained him did not have a reasonable belief Daniel was armed and dangerous. Daniel also requests we review the sealed record of the court's in camera hearing to determine whether the court disclosed all relevant complaints in response to his *Pitchess*[1] motion seeking discovery of the deputy sheriff's personnel records. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

At a suppression hearing held on March 10, 2023, Los Angeles County Deputy Sheriff Hrant Bairamian testified that at approximately 12:57 a.m. on December 8, 2021 he was in West Hollywood on patrol by himself in his marked patrol car. Deputy Bairamian was familiar with the area, which he described as a high-crime area, especially with respect to narcotics sales. While he was driving on Santa Monica Boulevard, Deputy Bairamian passed Daniel driving in the opposite direction in a car that had neither front nor rear license plates. Because the absence of license plates is a violation of Vehicle Code section 5200,

---

[1]     *Pitchess v. Superior Court* (1974) 11 Cal.3d 531, 536-538 (*Pitchess*).

2

subdivision (a), Deputy Bairamian initiated a traffic stop of the vehicle.

Once the vehicle stopped, Deputy Bairamian approached the driver's side of the vehicle.  He saw Daniel in the driver's seat, and there were two large dogs inside the vehicle.  Deputy Bairamian asked Daniel to lower his window, but Daniel responded that it did not roll down.  Deputy Bairamian then asked Daniel to open the car door, and Daniel complied.  Deputy Bairamian explained to Daniel that he had pulled him over because of the missing license plates, and Daniel responded that his girlfriend had just purchased the car at an auction.  Deputy Bairamian asked Daniel for his driver's license, but Daniel said he did not have identification with him.  Deputy Bairamian testified, "[Daniel] was acting suspiciously, and he was evasive when I asked him for his identification after he said he did not have it.  He looked away from me, looked into the car as if he was looking around for something."  When asked what he meant by "'suspiciously,'" Deputy Bairamian elaborated, "[M]ost people carry a driver's license in their pocket, in their wallet.  But considering the fact he told me he did not have his identification on him but continued to look through the car, that was to me, based on my training and experience, very suspicious."

Deputy Bairamian observed Daniel was wearing an oversized leather jacket with open pockets, "leading [Deputy Bairamian] to believe there were things inside [Daniel's] pockets."  Further, when asked whether he observed any bulges in Daniel's pockets, Deputy Bairamian responded that what looked "like there were things inside [Daniel's] pocket . . . translates to bulges in his pocket."  At that point, Deputy Bairamian requested that additional officers respond to his

3

location for backup. He testified the situation was "[d]angerous, to say the least. I was by myself at the time and on a dimly-lit street. And considering the bulges that I had observed and [Daniel's] demeanor and his evasiveness, including the two pit bulls inside the car, it was a high-risk stop for me." After the additional deputies arrived, Deputy Bairamian asked Daniel to exit the vehicle. Daniel refused, stating that he was "just traveling." Deputy Bairamian asked Daniel to get out of the vehicle several more times and eventually told him the deputies "were going to get him out of the vehicle one way or the other." Daniel finally exited the car, and Deputy Bairamian immediately placed him in handcuffs and conducted a patdown search.

Deputy Bairamian testified he conducted the patdown because he believed Daniel was armed. His conclusion was based on Daniel's baggy jacket, his evasive and suspicious demeanor, and the fact that the vehicle had no license plates, which Deputy Bairamian explained typically meant the vehicle had been stolen. During the patdown search Deputy Bairamian found a knife in Daniel's front waistband, a small bottle of alcohol in Daniel's left jacket pocket, and a glass narcotics pipe with a bulbous end in Daniel's right jacket pocket. Deputy Bairamian arrested Daniel for being in possession of narcotics paraphernalia.

Deputy Bairamian conducted a Department of Motor Vehicles record check on Daniel's name and birthdate and discovered Daniel's driver's license was suspended. The officers conducted an inventory search of Daniel's vehicle and found glass narcotics pipes, substances resembling methamphetamine and crack cocaine, digital scales, metal knuckles, and an explosive device.

During the suppression hearing, the trial court admitted into evidence Deputy Bairamian's body-worn camera footage from the encounter with Daniels, as well as three still images taken from the footage. The court noted the encounter was in December. Further, it looked at the still photographs, focusing on exhibit 1-C, and stated, "They are not inconsistent with the deputy's testimony that the jacket had bulges. . . . But it's also not being consistent with the pocket simply being open based on the way the jacket is being flexed at that time." The court initially stated it intended to grant the suppression motion. However, after hearing further argument, the court took the matter under submission. At the continued hearing, the court stated the prosecution had provided additional authority on the legality of patdown searches, and the court allowed further argument. The court acknowledged that its tentative ruling was based on its understanding of the standard for a lawful patdown search, which was different from the case law. The court denied the motion, finding the bulges in Daniel's baggy jacket provided reasonable suspicion to justify a patdown search for officer safety.

Daniel subsequently entered a no contest plea to transporting a controlled substance (count 1) and being a felon in possession of a firearm (count 3). On count 1 the trial court sentenced Daniel to the lower term of two years in state prison, suspended execution of the sentence, and placed Daniel on formal probation for two years. On count 3 the court imposed and suspended execution of a concurrent two-year sentence. The court dismissed the remaining counts.

## DISCUSSION

A. *The Trial Court Properly Denied the Motion To Suppress*

    1. *Governing law and standard of review*

When a police officer reasonably suspects a crime has been committed and the individual the officer has detained may be armed and dangerous, the officer may "conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." (*Terry v. Ohio* (1968) 392 U.S. 1, 30 (*Terry*).) "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence . . . ." (*Adams v. Williams* (1972) 407 U.S. 143, 146; accord, *In re H.M.* (2008) 167 Cal.App.4th 136, 143 (*H.M.*) ["[t]he sole justification for the search is the protection of the officer and others nearby"].)

To justify a patdown search for weapons, the officer need not have probable cause to arrest the individual or "be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." (*Terry, supra*, 392 U.S. at p. 27.) The officer's reasonable suspicion must be directed at the individual to be searched (*Ybarra v. Illinois* (1979) 444 U.S. 85, 95) and must be based on specific, articulable facts. (*Terry*, at p. 21; see *H.M., supra*, 167 Cal.App.4th at p. 143 ["a limited frisk for weapons is justified where the officer 'can point to specific and articulable facts which, considered in conjunction with rational inferences to be drawn therefrom, give rise to a reasonable suspicion that the suspect is armed and dangerous'"].) The determination whether

6

an officer had reasonable suspicion to conduct a patdown search for weapons is based on "a totality of the circumstances test, which is of necessity fact driven." (*People v. Osborne* (2009) 175 Cal.App.4th 1052, 1059; accord, *People v. Avila* (1997) 58 Cal.App.4th 1069, 1074.)  Reasonable suspicion must be based on "commonsense judgments and inferences about human behavior." (*Illinois v. Wardlow* (2000) 528 U.S. 119, 125.) "Whether a search is reasonable must be determined based upon the circumstances known to the officer when the search was conducted." (*H.M.*, at p. 144.)

Whether evidence should be suppressed because it was unlawfully seized is governed by federal constitutional standards. (Cal. Const., art. I, § 28, subd. (f)(2); *Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1223.)  In reviewing a ruling on a motion to suppress, we defer to the trial court's factual findings, express or implied, if supported by substantial evidence. (*People v. Ayala* (2000) 23 Cal.4th 225, 255; *People v. James* (1977) 19 Cal.3d 99, 107.)  The power to judge credibility, weigh evidence, and draw factual inferences is vested in the trial court. (*James*, at p. 107.) However, in determining whether, on the facts found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. (*People v. Zamudio* (2008) 43 Cal.4th 327, 342.)

> 2. *Deputy Bairamian had a reasonable suspicion to conduct a patdown search*

Daniel challenges only the legality of the patdown search, arguing it violated the Fourth Amendment because it was not supported by a reasonable suspicion he was armed and dangerous.  Daniel does not contend the traffic stop was improper.  Nor does he challenge the inventory search of the

7

vehicle, except to the extent it resulted from an unlawful patdown search.

Deputy Bairamian articulated the following facts in support of his decision to conduct a patdown search for his safety: Daniel was driving in a high crime area late at night; the immediate area of the traffic stop was dimly lit; the vehicle had no license plates, which indicated to Deputy Bairamian based on his training and experience that the car may be stolen; Daniel had no identification; Daniel acted evasively and suspiciously, looking away from the deputy and around the car; Daniel wore a bulky leather jacket with open pockets in which Deputy Bairamian observed bulges; and Daniel was uncooperative in not wanting to get out of the car.

Daniel argues these circumstances were insufficient to support a reasonable suspicion he was dangerous. He contends that, even if Deputy Bairamian reasonably suspected the vehicle was stolen, vehicle theft is not a violent crime, and therefore that fact could not give rise to a reasonable suspicion Daniel was armed and dangerous. However, an individual suspected of vehicle theft may "reasonably be anticipated to be armed with a weapon (such as a knife or a firearm)" and "also may reasonably be expected to possess 'tools of the trade' such as screwdrivers and pry tools, which may easily be used as weapons." (*People v. Osborne, supra,* 175 Cal.App.4th at p. 1060.)

Daniel also argues his baggy leather jacket did not provide a basis for suspicion because it was appropriate for the weather in December and leather "is a stiff fabric that often has stiff or bulging pockets." However, the United States Supreme Court has held an officer's observation of a bulge in a jacket pocket "permitted the officer to conclude that [the individual] was armed

8

and thus posed a serious and present danger to the safety of the officer." (*Pennsylvania v. Mimms* (1977) 434 U.S. 106, 112; accord, *People v. Miles* (1987) 196 Cal.App.3d 612, 618 [officer's observation of "exaggerated bulge" in defendant's jacket pocket supported inference defendant had a weapon]; *People v. Brown* (1985) 169 Cal.App.3d 159, 165 [patdown search was supported by reasonable suspicion where officer's "decision to pat appellant down was based on his observation of a bulge under appellant's jacket"].)

Based on the totality of the circumstances, including Deputy Bairamian's suspicion the vehicle was stolen, the bulge in Daniel's jacket pocket, Daniel's suspicious behavior in looking around the vehicle, and the dimly lit location in a high-crime area, it was reasonable for Deputy Bairamian to believe his safety was at risk, justifying the decision to perform a patdown search of Daniel. (See *H.M., supra,* 167 Cal.App.4th at p. 144 ["[n]ervous, evasive behavior is a pertinent factor in determining a reasonable suspicion" suspect was armed, citing *Illinois v. Wardlow*, *supra*, 528 U.S. at p. 124]; *People v. Collier* (2008) 166 Cal.App.4th 1374, 1377-1378 & fn. 1 [wearing baggy clothing, coupled with other suspicious circumstances, can support a patdown search for weapons]; *People v. Williams* (1992) 3 Cal.App.4th 1100, 1105 [patdown search may be justified by a number of factors, including "furtive movements, unidentifiable clothing bulges, or the nature of the offense the officer is investigating"]; see also *Wardlow*, at p. 124 [presence in a high crime area is not determinative but is "among the relevant contextual considerations in a *Terry* analysis"]; cf. *People v. Souza* (1994) 9 Cal.4th 224, 240-241 [area's reputation for criminal activity and the time of night are appropriate

considerations in assessing whether investigative detention is reasonable under the Fourth Amendment].)

B.    *The Trial Court Complied with Its Obligations Under*
      Pitchess

On August 3, 2022 Daniel filed a *Pitchess* motion pursuant to Evidence Code section 1043, seeking discovery of Deputy Bairamian's personnel records concerning "[a]ll complaints . . . relating to acts of aggressive behavior, violence, excessive force, or attempted violence or excessive force, racial bias, coercive conduct, violation of constitutional rights, fabrication of reasonable suspicion and/or probable cause, illegal search/seizure; false arrest, perjury, dishonesty, writing of false police reports . . . and any other evidence of misconduct amounting to moral turpitude . . . ."  On September 9, 2022 the trial court granted the motion in part, ordering disclosure of any information concerning Deputy Bairamian's dishonesty.  The court conducted an in camera hearing and found no disclosure was required.

"'When a defendant shows good cause for the discovery of information in an officer's personnel records, the trial court must examine the records in camera to determine if any information should be disclosed.'"  (*People v. Rivera* (2019) 7 Cal.5th 306, 338; accord, *People v. Anderson* (2018) 5 Cal.5th 372, 391 (*Anderson*).)  "'The court may not disclose complaints over five years old, conclusions drawn during an investigation, or facts so remote or irrelevant that their disclosure would be of little benefit.'" (*Rivera*, at p. 338; accord, *People v. Winbush* (2017) 2 Cal.5th 402, 424; see Evid. Code, § 1045, subd. (b).)  "'*Pitchess* rulings are reviewed for an abuse of discretion.'"  (*Rivera*, at p. 338; accord, *Anderson*, at p. 391.)

10

Daniel requests we review the sealed portion of the record, which includes the transcript of the in camera hearing.  The People do not object to our review.  Daniel's request for us to review the sealed records is proper.  (*Anderson, supra*, 5 Cal.5th at p. 391 ["Defendant properly asks us to review the sealed record of the in camera hearing to determine whether the court erroneously failed to provide discovery that he should have received."]; see *Rivera, supra*, 7 Cal.5th at pp. 338-339 [court reviewed sealed transcript of in camera hearings and sealed exhibits].)

We have reviewed the sealed record.  The trial court did not abuse its discretion in concluding there was no discoverable information to disclose to Daniel.  (See *Anderson, supra*, 5 Cal.5th at p. 391; *People v. Winbush, supra*, 2 Cal.5th at p. 424.)

## DISPOSITION

The judgment is affirmed.


FEUER, J.

We concur:


MARTINEZ, P. J.


SEGAL, J.

11